U. S. INDUSTRIES, INC., d/b/a, Webcor Electronics, Inc., Plaintiff,

v.

SECOND NEW HAVEN BANK, Defendant.

Civ. No. N–75–305.

United States District Court, D. Connecticut.

Nov. 17, 1978.

John B. Nolan, Day, Berry & Howard, Hartford, Conn., for plaintiff.

Kalman A. Sachs, Sachs, Sachs & Sachs, New Haven, Conn., William F. Gallagher, New Haven, Conn., for defendant.

## MEMORANDUM OF DECISION

DALY, District Judge.

This is an action by the plaintiff, U. S. Industries, Inc., to recover damages from the defendant, Second New Haven Bank, for defendant's failure to honor an irrevocable letter of credit issued by the defendant in favor of the plaintiff. Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332.

The material facts in this matter are largely undisputed. On June 6, 1975, on instruction from Railroad Salvage, Inc., defendant issued a letter of credit in plaintiff's favor for sums up to $80,000, covering certain goods to be shipped by plaintiff thereafter. The letter of credit required, *inter alia,* that any drafts be accompanied by pertinent invoice and "drawn and negotiated not later than August 4, 1975," and further noted as "Special Instructions" that:

> Drafts must be accompanied by your certified statement that the drawing represents payment of goods, which have been duly shipped to Railroad Salvage, and for which payment has been demanded and not received within seven (7) days of such shipment.

On Friday, July 25, 1975, plaintiff shipped goods contemplated by the letter of credit to Railroad Salvage. Accompanying this shipment were two invoices indicating a combined "Amount Due" of $28,044. Each invoice recited the words "Due 7 days Letter of Credit" in a "TERMS" box on the invoice.

On Saturday, August 2, 1975, plaintiff's controller, Mr. Clifford Boggs, found that Railroad Salvage had not yet made payment. Accordingly, he sent the defendant written demand for payment, enclosing drafts and attaching copies of the invoices. The demand letter expressly set forth the following:

> We certify that the accompanying drafts represent drawings in payment for the merchandise duly shipped to Railroad Salvage and for which payment has not been received from Railroad Salvage within seven (7) days of such shipment.

The plaintiff's letter did not expressly certify that payment had been demanded of Railroad Salvage. The only references to demand for payment were in the invoices accompanying the demand letter.

On Monday, August 4, 1975, the expiration date of the letter of credit, the demand letter was received by the defendant. At some point during that morning, plaintiff's controller, Boggs, spoke with Mr. Richard Billings, an officer of the defendant who was in charge of letters of credit. After determining that Billings had received the demand letter and the accompanying documents, Boggs inquired whether the documents were in order. Boggs was told by Billings that "there did not appear to be any problems" with plaintiff's documents, and that if any problems arose, Billings would contact the plaintiff.

Later that same day, Billings determined that there were "minor discrepancies" in the documentation. He contacted Rubin W. Vine, President of Railroad Salvage, to see if Vine would approve payment despite the possible discrepancies. Vine indicated to Billings that Railroad Salvage did not want the drafts honored if indeed there were actual discrepancies in the demand letter.

On August 6, 1975, two days after the letter of credit had expired, plaintiff received a telex communication from Billings refusing payment because "[y]our certifica-

tion lacks indication payment has been demanded from Railroad Salvage . . . as required . . . and our customer will not approve discrepancy."

### I.

■ An issuer is obligated to honor a draft or demand for payment which complies with the terms of the letter of credit. C.G.S.A. § 42a–5–114. The first issue presented by the facts of this case is whether the documents tendered by the plaintiff to the defendant were in compliance with the terms of the letter of credit.

■ Plaintiff admits that its demand letter did not contain an express certification of demand for payment. However, the plaintiff argues that: (1) the invoices accompanying the demand letter clearly evidenced the demand for payment, and (2) "such a purely technical error cannot be said to constitute noncompliance." The defendant, on the other hand, contends that the general rule of strict compliance precludes such an interpretation.

Article 5 of the Uniform Commercial Code, which governs this transaction, does not specify what constitutes compliance with the terms of a letter of credit, nor does this Court find any guidance from the Connecticut courts. The Second Circuit has, however, enunciated the general rule that "the essential requirements of a letter of credit must be strictly complied with by the party entitled to draw against the letter of credit." *Venizelos, S. A. v. Chase Manhattan Bank,* 425 F.2d 461, 465 (2d Cir. 1970). *See also Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier (RATKA),* 508 F.2d 969, n. 7 at 977 (2d Cir. 1974).

The Second Circuit's decision in *Venizelos* involved, in part, the problem of construing ambiguous terms in a letter of credit. The court, while establishing the standard of strict compliance in letter of credit transactions, did not state how that standard was to be applied in cases such as the one at bar. This Court, therefore, guided simply by the rule of strict compliance, carefully will review the facts in the present case to determine whether the plaintiff's demand letter complied with the terms of the letter of credit.

In the present case, although the plaintiff did not explicitly certify that a demand for payment had been made, the invoices attached to the demand letter indicated that such a demand had been made. Thus, on their face, the submitted documents put the defendant on notice that the plaintiff had made the required demand for payment. While a certified statement helps ensure a high degree of truthfulness and reliability in the representations so certified, inasmuch as the plaintiff in this case submitted copies of the original invoices we think that purpose has been served. Under the facts of the present case, this Court finds that the submission of the invoices in lieu of a certified statement of demand does not run afoul of the rule of strict compliance.

There is some support for this position in two cases decided by the First Circuit. In *Banco Espanol de Credito v. State Street Bank and Trust Company,* 385 F.2d 230 (1st Cir. 1967), a Spanish bank sued a domestic issuer bank because of the issuer's refusal to honor and pay two drafts drawn upon it under two irrevocable letters of credit. The letter of credit of the domestic bank called for the presentation of an inspection certificate by a named firm stipulating "that the goods [were] in conformity with the order." The issue was whether the domestic bank was justified in refusing to honor the drafts of the Spanish bank on the grounds that the inspection certificate did not meet the terms of the letter of credit. Some confusion occurred between the parties as to what was an "order" and what was a "stock sheet" resulting in the required inspection certificate stating that the "whole (order was) found conforming to the conditions estipulated (sic) on the Order-Stock-Sheets."

One of the questions which that court addressed was whether the "Order-Stock-Sheets" terminology was different from the "order" specifically called for by the letter of credit. The court recognized the necessi-

ty of strict construction of documents where financial transactions rest upon the accuracy of the documents rather than on the condition of goods they represent. However, the court stated:

> [W]e note some leaven in the loaf of strict construction. Not only does *haec verba* not control absolutely, see, e. g., *O'Meara v. National Park Bank*, 239 N.Y. 386, 146 N.E. 636, 39 A.L.R. 747 (1925), but some courts now cast their eyes on a wider scene than a single document. We are mindful, also, of the admonition of several legal scholars that the integrity of international transactions (i. e., rigid adherence to material matters) must somehow strike a balance with the requirement of their fluidity (i. e., a reasonable flexibility as to ancillary matters) if the objective of increased dealings to the mutual satisfaction of all interested parties is to be enhanced.

*Banco Espanol de Credito v. State Street Bank and Trust Company, supra,* at 234. The court then found that under the circumstances there was no meaningful variance from the terms of the letter of credit by the use of the term "Order-Stock-Sheets" in the inspection certificate rather than the term "order."

The First Circuit's decision in *Banco Espanol* was recently affirmed and expanded in *Flagship Cruises Ltd. v. New Englnd Merchants' National Bank*, 569 F.2d 699 (1st Cir. 1978). In *Flagship Cruises,* the beneficiary of a letter of credit brought an action for wrongful dishonor against the issuer of the letter of credit and the bank which presented the letter of credit to the issuer. Among the issues that the court considered was whether the draft submitted by the beneficiary complied with the requirements of the letter of credit. The issuer argued that the draft did not comply because (1) the draft was drawn by the wrong party, (2) there was no statement linking the draft to the letter of agreement, and (3) the draft did not recite the precise legend described in the letter of credit. The court, in an opinion by Chief Judge Coffin, reversed the district court's finding that the discrepancies justified dishonor. In so doing, the court recognized that the rule of strict compliance ultimately must be viewed in terms of the policies and purposes underlying the use of letters of credit.

> We do not see these rulings as retreats from rigorous insistence on compliance with letter of credit requirements. They merely recognize that a variance between documents specified and documents submitted is not fatal if there is *no* possibility that the documents could mislead the paying bank to its detriment.

*Id.* at 705. (emphasis in original). In similar fashion under the facts of the present case, it is not apparent to this Court how the demand letter and accompanying documents submitted by the plaintiff pursuant to the letter of credit possibly could have misled the defendant to its detriment. This Court finds, therefore, that the demand letter in this case met the standard of strict compliance.

## II.

Although this Court holds that the plaintiff's documentary demand for payment was in strict compliance with the terms of the letter of credit, there is another legal basis on which the plaintiff is entitled to recover. As mentioned previously, plaintiff's controller, Boggs, on August 4, 1975, spoke with Billings, an officer of the defendant. Concerning the demand letter and accompanying documents, Billings told Boggs that "there did not appear to be any problems" with the documents and that if any problems arose, he (Billings) would contact the plaintiff. The defendant, however, did not notify plaintiff of the deficiency in the demand letter until after the expiration date of the letter of credit, effectively precluding the plaintiff from presenting a complying demand. In this regard, the Court finds persuasive the fact that the defendant admittedly knew of these discrepancies prior to the expiration of the letter of credit.

There are few reported cases dealing with the issue of estoppel in cases similar to the one at bar. In *Barclays Bank D. C. O. v. Mercantile National Bank,* 481 F.2d 1224

(5th Cir. 1973), the court dealt with the problem of whether the concept of waiver should be applied, in a proper factual setting, to letter of credit transactions.

There are no provisions in Article 5 which would indicate a belief on the part of the drafters that this doctrine of waiver should be inapplicable under the U.C.C. Absent a disavowal of the rule, a section providing to the contrary, or a section which conflicts with the purpose of this rule, § 5–102(3) provides an adequate source for the conclusion that this rule of waiver may be applied in appropriate cases. . . . Our decision that the rule should be applied to Mercantile is in accord with a court's duty to construe Article 5, as well as the other rules relating to letters of credit not codified in this Article, in such a manner as to conform the rules to an underlying sense of fair play so that the expectations of the parties to a business transaction will not be frustrated by the application of a rule which is not grounded in sound policy considerations.

*Id.* at 1237. This Court is of the opinion that this same reasoning is applicable to the doctrine of estoppel. In the present case, the plaintiff, based on the defendant's assurances, reasonably assumed that the defendant would honor its obligation under the letter of credit. Since the plaintiff acted in reliance and to its detriment, the defendant is estopped from asserting any defense it may have had concerning nonconformity of the documentary demand for payment without calling the discrepancy to the attention of the plaintiff prior to the expiration of the letter of credit. This situation, taken together with the fact that the goods concededly were sent and were received, leads this Court to the equitable conclusion that payment should be made pursuant to the letter of credit and that the defendant be left to whatever remedies it may have against Railroad Salvage.

Under C.G.S.A. § 42a–5–115(1), the plaintiff is entitled to recover of the defendant the face amount of the two drafts in the combined amount of $28,044, together with interest at the rate of six percent from the date of dishonor, August 4, 1975, until paid.

A judgment will be entered accordingly.