FIRST ARLINGTON NATIONAL BANK, Plaintiff-Appellee, *v.* GUS STATHIS, Defendant and Counterplaintiff-Appellant.—(DENIS J. RINTZ *et al.*, Defendants and Counterdefendants.)

First District (5th Division)    No. 79-1441

Opinion filed September 26, 1980.—Rehearing denied January 7, 1981.

Jerome H. Torshen, Ltd., of Chicago (Jerome H. Torshen and Abigail K. Spreyer, of counsel), for appellant.

Vihon, Fuchs, Temple & Berman, Ltd., of Chicago (Robert F. Fuchs and Vincent F. Lucchese, of counsel), for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Defendant Stathis, in appealing the entry of summary judgment for plaintiff in an action for declaratory judgment concerning the parties'

rights and obligations under a letter of credit, presents as the sole issue the propriety of that judgment.

The facts are largely undisputed. It appears that in early 1973, Stathis entered into an agreement for the sale of real estate to Ralph Edgar, Denis Rintz, and Phillip Grandinetti, Jr. Part of the consideration was a promissory note dated March 30, 1973 (hereafter "March note"), in the principal amount of $575,000, executed by the three purchasers and their respective wives. The note provided that the first principal payment of $275,000 would be due on September 30, 1975, and the final payment of $300,000 was due on March 30, 1976. Interest was assessed at a rate of 8 percent of the outstanding principal, with the first payment of interest due on March 30, 1974, and subsequent payments due on March 30 of each following year. The note further provided that the outstanding debt was to be secured by a letter of credit in the amount of $575,000 which was to be replaced each year at least 30 days prior to its expiration date. In the event the credit was not timely renewed, or in the event of default in the payment of either interest or principal, the balance due was to be immediately payable without notice.

Rintz, Grandinetti and Edgar arranged the issuance of a letter of credit from the plaintiff bank and, in exchange therefor, executed a demand note payable to plaintiff in the amount of $575,000 at 10 percent annual interest, which was secured by certain property. They also pledged certain collateral; namely, a certificate of deposit in the amount of $187,500 and certain real estate owned by Rintz and Edgar. The letter of credit which plaintiff issued to Stathis guaranteed payment of $575,000 upon his presentation of: the $575,000 March note, endorsed by him without recourse to the order of plaintiff; any documents securing the note; Stathis' notarized statement that the note is due by reason of acceleration and a detailed statement of the nature of the default; Stathis' notarized statement that "demand has been made upon the makers of the note for payment according to its accelerated maturity, and that such demand has not been complied with for a period of at least 10 days following the mailing of such demand letters"; and copies of such demand letters. It was further stipulated that the credit would expire on May 5, 1974.

The first payment of interest on the March note, which was due on March 30, 1974, was not made. On April 2, Stathis' attorney sent three notices of default (hereafter "demand letters") by certified mail—the first mailed to Ralph and Judy Edgar at Ralph's place of business; the second mailed to Denis and Marilyn Rintz at Denis' place of business; and the third mailed to Phillip and Betty Grandinetti at Phillip's place of business. Each letter stated that as of March 30, $46,000 in interest was due; that, as provided in the note, the letter of credit was to be replaced at least 30 days prior to its expiration date (May 5, 1974); and that, unless the first

interest payment were made and the letter of credit replaced by April 8, 1974, "then, the entire principal and all interest due under said note shall be deemed automatically accelerated and immediately due and payable, without further notice." The demand letters were received on April 4, 1974.

On April 23, 1974, Phillip Grandinetti entered into an agreement with Stathis concerning the payment of the first installment of interest (hereafter the "Grandinetti agreement"). Initially, the agreement recited that Phillip desired to avoid litigation and the entry of judgment against himself and his wife and was willing to pay his portion of the interest as well as indemnify Stathis for the balance of the interest due. It further provided that Phillip would execute two notes payable to Stathis—the first, for one-third of the first interest installment ($16,257.55), was due on June 5, 1974; and the second, representing the remaining two-thirds of the interest ($32,515.11), was payable on demand. The agreement stated that Stathis would first attempt to collect this remaining two-thirds of the interest from the Edgars and Rintzes (Betty Grandinetti was not mentioned) and, if unsuccessful, would then make demand on Phillip Grandinetti for payment on the second note. After execution of the agreement, Phillip signed the two notes.

On April 25, 1974, Stathis sought payment on the letter of credit and presented to plaintiff a sight draft in the amount of $575,000; the March note endorsed by Stathis without recourse to the order of plaintiff; Stathis' affidavit that the March note was due by reason of acceleration; Stathis' affidavit that the demand letters were sent; and copies of the demand letters and the certified mail return receipts.

Plaintiff mailed Stathis a letter on April 29, 1974, refusing to pay the letter of credit, explaining that "the demand letters which you have attached to your notarized statement do not satisfy the conditions of the letter." On May 3, plaintiff mailed another letter, explaining further its basis for refusing to honor the credit. First, it stated that the demand letters "mailed to the men's places of business [do not] constitute reasonable notice to the wives, each of whom is jointly and severally liable for the full amount of the note as a co-maker or guarantor thereof." Second, it stated that it had learned of the Grandinetti agreement and it viewed this agreement as effectively releasing all of the other comakers from their obligations under the note and thus "a substantial part of the security we are holding to protect the bank's position in this matter belongs to the guarantors." The parties' attempts at settling the dispute were unsuccessful, and on June 13, 1974, plaintiff sent Stathis a final letter summarizing its position.

On June 14, 1974, plaintiff filed a complaint for declaratory judgment against Stathis, Denis and Marilyn Rintz, Phillip and Betty Grandinetti,

and Ralph and Judy Edgar, seeking a determination as to whether it was obligated to honor Stathis' demand under the letter of credit.[1] Plaintiff and defendants filed motions for summary judgment, and the trial court granted plaintiff's motion but denied defendants', stating:

> "I am not persuaded by the argument put forth in the motion by the bank with respect to whether or not the proper demand was made. I think the demand was proper and sufficient. I have no problem with it really.
>
> * * * So, too, with the service on the parties. I believe proper service has been made. The demand on a party is a demand on all. It's true that the demand was received by agents for the husbands at a business address but I believe that demand on one is a demand on all and the wives are included within the demand, so I am not persuaded either with respect to that argument.
>
> * * *
>
> * * * [T]he difficulty I believe is generated by the side agreement, not because it was secret, if that is the characterization that one party wishes to place on it.
>
> I put no particular emphasis on whether it was known or unknown at the time, not because it took the interest as a principle of accepting interest; however, I do find, and the basis for my decision this morning is that when Mrs. Grandinetti was excused from having to remain liable, in effect, what has happened is that all accommodation parties are thereby released. You could not thereby give back the note in proper form.
>
> * * * I do not believe that the way it was done gave the bank the kind of security that it bargained for and that act I believe has created a problem for me in the case.
>
> * * *
>
> * * * [I]t's clear [Betty Grandinetti] has been released under that agreement and with her gone, I think the entire question of guaranties and accommodation makers flies with it."

After entry of the judgment order, Stathis filed a motion to reconsider and, in support thereof, submitted his attorney's affidavit stating that he subsequently discovered duplicates of the two notes executed pursuant to the Grandinetti agreement and that they are signed by Betty Grandinetti. His position was that as a result of these newly discovered notes, Betty was not released from her obligations; that thus none of the other comakers was released; and that the trial court's ruling was therefore based on incomplete information. The trial court ordered that depositions be taken of the Grandinettis; however, the motion to recon-

---

[1] Stathis also filed a counterclaim against the Rintzes, Grandinettis and Edgars, seeking to recover interest accrued on the March note. That counterclaim is not before us, however.

sider was ultimately denied on the grounds that Stathis made no proper showing as to why these notes had not been discovered sooner. This appeal followed.

OPINION

Initially, we note that the transactions surrounding a bank's issuance of a letter of credit were explained by the court in *Baker v. National Boulevard Bank* (N.D. Ill. 1975), 399 F. Supp. 1021, 1024:

"Three separate agreements are involved in the issuance of a letter of credit by the bank for the benefit of a beneficiary. [Citation.] The first is the contract between the beneficiary * * * and the customer * * * which is the agreement underlying the letter of credit. Under the second contract, the customer procures a letter of credit, often from a bank, in return for consideration or collateral. The third agreement consists of the bank's agreement to pay the beneficiary the amount of the letter of credit, if the beneficiary complies with the terms of the credit."

Further, there are two basic types of letters of credit. The first is the traditional or sales credit, in which the seller of the goods (beneficiary) receives payment by means of the letter of credit procured by the purchaser (bank's customer); while the second is a standby or guaranty letter of credit (which is the subject of the case at bar), in which the issuer (bank) agrees to pay the beneficiary upon presentment of certain documentation indicating that the purchaser has defaulted on a payment obligation. (*Republic National Bank v. Northwest National Bank* (Tex. 1979), 578 S.W.2d 109, 113.) Both types of credits are governed by article 5 of the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, par. 5—101 *et seq.* (hereafter the Code)). *Pastor v. National Republic Bank* (1979), 76 Ill. 2d 139, 390 N.E.2d 894.

I.

As noted above, the trial court held that plaintiff was not required to honor the letter of credit. Its apparent reasoning was that Stathis, in not reserving a right of recovery against Betty Grandinetti in the Grandinetti agreement, effectively released her from liability on the March note; that by application of section 3—606 of the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, par. 3—606) other comakers were released as well; that Stathis' tender of the March note as one of the documents required by the letter of credit was thus defective; and that therefore plaintiff was not required to honor the credit.

■■■ The parties herein disagree sharply as to whose obligations were released by the Grandinetti agreement and to what extent. We note that the threshold question, however, is whether plaintiff could properly look

beyond the documents Stathis was required to submit and to the Grandinetti agreement in determining whether to honor the credit. Stathis' first contention is that plaintiff was not so entitled. In this regard, we note that an issuing bank is said to deal in documents and not in contract performance (*Pastor v. National Republic Bank*) and is under a duty to examine with care the documents submitted by the beneficiary to determine whether they comply on their face with the terms of the credit (Ill. Rev. Stat. 1979, ch. 26, par. 5—109(2); *Werner v. A. L. Grootemaat & Sons, Inc.* (1977), 80 Wis. 2d 513, 259 N.W. 2d 310). "Generally, if the documents presented conform to the requirements of the credit, the issuer is not required or even permitted to go behind the documents before honoring demands for payment" (*New York Life Insurance Co. v. Hartford National Bank & Trust Co.* (1977), 173 Conn. 492, 501, 378 A.2d 562, 567; also see *Intraworld Industries v. Girard Trust Bank* (1975), 461 Pa. 343, 336 A.2d 316), and "[i]f a conforming presentation of documents is made, the issuer of a credit is obligated to pay without reference to the rights and obligations of the parties to the underlying contract" (*Republic National Bank v. Northwest National Bank* (Tex. 1979), 578 S.W.2d 109, 114; see also *Pastor v. National Republic Bank*). Thus, the obligation of the issuer to pay the beneficiary is completely independent of the underlying agreement between the beneficiary and the bank's customer (*Baker v. National Boulevard Bank*; *Chase Manhattan Bank v. Equibank* (W.D. Pa. 1975), 394 F. Supp. 352, *vacated on other grounds* (3d Cir. 1977), 550 F.2d 882), and the issuer's obligation to honor the credit therefore remains intact, even if the underlying agreement has been modified (*Fidelity Bank v. Lutheran Mutual Life Insurance Co.* (10th Cir. 1972), 465 F.2d 211; *Prudential Insurance Co. of America v. Marquette National Bank* (D. Minn. 1976), 419 F. Supp. 734; *Brummer v. Bankers Trust* (1977), 268 S.C. 21, 231 S.E.2d 298) or nonfraudulently breached (*Dovenmuehle, Inc. v. East Bank* (Colo. App. 1977), 563 P.2d 24).

██ In view of the above law, we think it is clear that plaintiff was allowed only to determine if the documents conformed on their face to the requirements of the credit. The fact that any of the makers of the March note may have been partially or fully released affected only the "underlying agreement" and has no bearing on plaintiff's primary obligation to Stathis to honor the credit if the documents conform on their face. We thus believe the instant case is remarkably similar to *Asociacion de Azucareros de Guatemala v. United States National Bank* (9th Cir. 1970), 423 F.2d 638. In that case, an individual named Greenberg entered into an agreement to purchase sugar from the plaintiff association. Greenberg procured the issuance of a letter of credit from his bank in favor of the association and, pursuant to the terms thereof, the bank would pay the association 90 percent of the invoice value of the sugar upon presentation of documents evidencing shipment of sugar of a specified quality. After

Greenberg received the sugar, he told the bank that the shipment was of an inferior quality and that the association had agreed to modify the letter of credit to provide payment of 75 percent rather than 90 percent of the invoice value. The bank called the association and informed it of the defect, and on that basis the association expressed its consent to modification of the credit. The association then presented the documents and received payment from the bank for 75 percent of the invoice value. Later, the association learned that the sugar it had delivered was in fact not of inferior quality, and it filed an action against the bank and Greenberg for the difference between 90 percent and 75 percent of the invoice value. The association's claim against the bank was tried first, after which the trial court entered judgment for the association and, on the next day, the association and Greenberg entered into a mutual release of all claims. The bank thus moved to vacate the judgment against it on the grounds that the association's release of Greenberg on the purchase contract also served to release the bank on its liability under the letter of credit. The trial court denied the motion, and the court of appeals affirmed, stating:

> "The Bank likens its positions to that of a surety or guarantor. In this it is mistaken. A surety is generally not liable on his undertaking unless his principal is liable and in default on the underlying debt. The defenses of the principal are available to the surety and, if the underlying debt is cancelled, the surety's obligation ceases. *See*: Restatement of Security, §122 (1941).
>
> The letter of credit, unlike the classic surety undertaking, is a primary obligation between the issuer and the beneficiary. Uniform Commercial Code, [Article 5,] §5—114(1), comment 1. * * * The issuer is not concerned with the state of affairs between the buyer and seller. * * *
>
> * * * [W]e hold that any modification or revocation of the underlying agreement between buyer and seller (or of the rights of the parties springing from it) cannot be permitted to affect the letter of credit unless the beneficiary explicitly consents to the alteration or revocation of the letter. The mutual release between Greenberg and the Association did not contain the consent of the Association to a revocation of the letter of credit." (423 F.2d 638, 641.)

Thus, in the instant case as in *Asociacion*, the Grandinetti agreement at most affected Stathis' rights as against the makers of the March note. In light of the fact that Stathis did not consent to any modification of the credit, this alleged alteration in the rights of the parties to the underlying agreement as against each other cannot affect plaintiff's primary obligation to Stathis.

■■ Plaintiff's position is that it was nonetheless entitled to consider the effect of the Grandinetti agreement and, in support, cites section 5—114(2) of the Uniform Commercial Code, which states:

"(2) Unless otherwise agreed when documents appear on their face to comply with the terms of a credit but a required document does not in fact conform to the warranties made on negotiation or transfer of a document of title (Section 7—507) or of a security (Section 8—306) or is forged or fraudulent or there is fraud in the transaction

(a) the issuer must honor the draft or demand for payment if honor is demanded by a negotiating bank or other holder of the draft or demand which has taken the draft or demand under the credit and under circumstances which would make it a holder in due course (Section 3—302) and in an appropriate case would make it a person to whom a document of title has been duly negotiated (Section 7—502) or a bona fide purchaser of a security (Section 8—302); and (b) in all other cases as against its customer, an issuer acting in good faith may honor the draft or demand for payment despite notification from the customer of fraud, forgery or other defect not apparent on the face of the documents but a court of appropriate jurisdiction may enjoin such honor."

(Ill. Rev. Stat. 1979, ch. 26, par. 5—114(2).)

Plaintiff appears to argue that Stathis' presentation of the March note was "fraudulent" because the Grandinetti agreement allegedly released certain comakers from liability under the note; that Stathis did not hold his sight draft under circumstances that would render him a holder in due course thereof; and that therefore subsection (b) of section 5—114(2) is applicable, under which plaintiff properly refused honor. (See Ill. Ann. Stat., ch. 26, par. 5—114, Uniform Commercial Code Comment, at 601 (Smith-Hurd 1963).) We disagree. The "fraud" provision of section 5—114 "is a narrow exception" (*Foreign Venture Limited Partnership v. Chemical Bank* (1977), 59 App. Div. 2d 352, 356, 399 N.Y.S.2d 114, 116) and encompasses "[o]nly * * * rare situations of egregious fraud" (*New York Life Insurance Co. v. Hartford National Bank & Trust Co.* (1977), 173 Conn. 492, 501, 378 A.2d 562, 567). As was noted in *Werner v. A. L. Grootemaat & Sons, Inc.* (1977), 80 Wis. 2d 513, 523, 259 N.W.2d 310, 315, this exception

" 'must be narrowly limited to situations of fraud in which the wrongdoing of the beneficiary has so vitiated the entire transaction that the legitimate purposes of the independence of the issuer's obligation would no longer be served.' Another court recently has held that the type of fraud contemplated by the code provision

must be 'fraud in the factum and not fraudulently calling the letter of credit.' A third court has held that fraud sufficient to enjoin honoring a letter of credit must be 'fraud in the formation of the underlying contract.' "

In the case at bar, plaintiff asserts that such fraud was committed when Stathis presented the March note which was subject to the Grandinetti agreement. We think it is clear, however, that such action did not constitute a "fraud in the formation of the underlying contract," since that contract had been executed beforehand. Nor does it "so vitiate the entire transaction that the legitimate purpose of the independence of the issuer's obligation" is no longer served. We therefore conclude that the record discloses no evidence of fraud arising from the Grandinetti agreement which would justify plaintiff in dishonoring the letter of credit.

■■ We would also point out, however, that at the oral arguments of this case plaintiff additionally asserted that, after the March note was endorsed over to it by Stathis, if it had honored the letter of credit it would have sought to recover against the Rintzes, Edgars, and Grandinettis on that note. Thus, it argued that it would be unfairly prejudiced if it were not allowed to look to the Grandinetti agreement and dishonor the credit because Betty Grandinetti and other comakers allegedly had been released from liability on the note and, as a result, its value to plaintiff as a mode of recovery is greatly diminished. We do not view plaintiff as being so prejudiced, however. Plaintiff entered into an agreement with Rintz, Grandinetti and Edgar for the issuance of the letter of credit and, in consideration therefor, plaintiff received a secured $575,000 note with a security interest in certain collateral; namely, a certificate of deposit in the amount of $187,500 and certain real estate. Clearly, plaintiff was not without a basis for recovery or reimbursement in the event that it was required to honor the credit, and we therefore reject plaintiff's argument in that regard.

In light of the above, we conclude that plaintiff was not entitled to look to the Grandinetti agreement and rely upon it as a grounds for dishonoring the letter of credit and hold that the trial court erred in determining that plaintiff was not required to honor the credit on that basis.

Stathis' second contention is that the trial court erred in refusing to vacate the judgment and reconsider its ruling. The record discloses that Stathis sought to vacate the judgment after he purportedly discovered duplicate originals of the two notes executed pursuant to the Grandinetti agreement and which were signed by Betty Grandinetti as well as her husband Phillip. Stathis argued that as a result of these notes, Betty was not released from her obligations under the March note and that therefore the trial court should have reconsidered its ruling, which was based on the

effect of the Grandinetti agreement. Since we have held above, however, that the trial court should not have considered the Grandinetti agreement at all in ruling on plaintiff's obligation to honor the letter of credit, we have no need to consider Stathis' remaining contention that the trial court erred in refusing to reconsider the effect of that agreement in light of the newly discovered notes.

## II.

■■ Plaintiff, however, cognizant of the rule that this court may affirm a judgment of the trial court on the basis of any grounds appearing in the record (*Third Swansea Property, Inc. v. Ockerlund Construction Co.* (1976), 41 Ill. App. 3d 894, 354 N.E.2d 148), raises alternative arguments which would uphold the finding that it was not required to honor the letter of credit. First, it argues that the credit clearly required Stathis to deliver the March note without any reservation of rights and, by accepting the two notes pursuant to the Grandinetti agreement, Stathis "withheld from plaintiff a significant portion of that note (*i.e.*, the $48,772.66 in interest that had accrued thereon)"; that Stathis thus failed "to present a proper note by attempting to effect such a reservation of rights"; and that therefore plaintiff was justified in dishonoring the letter of credit. Second, plaintiff argues that under paragraph 2 of the credit, Stathis was required to present "any documents given to secure the [March] note * * * with good and sufficient assignments or endorsements where appropriate"; that the two notes which Grandinetti signed pursuant to the Grandinetti agreement secured the March note and thus Stathis was required to but did not submit them; and that therefore it was entitled to dishonor the credit. Third, plaintiff asserts that the credit required Stathis to submit a notarized statement detailing the nature of the default which led to acceleration; that because Stathis' affidavit did not refer to the Grandinetti agreement, it did not sufficiently provide the details of the default; and that therefore plaintiff could properly dishonor the credit. We note, however, that plaintiff made none of these objections in its correspondence with Stathis wherein it originally refused to honor the credit. Those objections were therefore waived and cannot now be asserted. *Barclays Bank D.C.O. v. Mercantile National Bank* (5th Cir. 1973), 481 F.2d 1224; *Bank of Taiwan, Ltd. v. Union National Bank* (3d Cir. 1924), 1 F.2d 65; *Dovenmuehle, Inc. v. East Bank.*

■■ Plaintiff also raises arguments that it did in fact make in the initial stages of this dispute. First, it argues that Stathis did not properly comply with that requirement in the credit that demand be made upon the makers for payment. The relevant paragraph of the credit stated that in order to obtain payment, Stathis was required to submit:

"(4) A notarized statement signed by you that demand has been

made upon the makers of the note for payment according to its accelerated maturity, and that such demand has not been complied with for a period of at least 10 days following the mailing of such demand letters, with copies of the letters attached."

In attempted compliance with this provision, Stathis submitted a notarized statement that demand was sent to the makers as well as a copy of the letter. The copy revealed that three demand letters were sent—one to Ralph and Judy Edgar, at Ralph's business address; one to Denis and Marilyn Rintz, at Denis' business address; and one to Phillip and Betty Grandinetti, at Phillip's business address. Plaintiff argues that this did not comply with the credit's requirement that demand be made "upon the makers of the note for payment" because the wives, as comakers, did not receive individual notices. We do not believe, however, that notice was so defective as to justify plaintiff in dishonoring the credit. Section 3—504 of the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, par. 3—504), which deals with demand for payment, provides:

"§3—504 How Presentment Made

(1) Presentment is a demand for acceptance or payment made upon the maker, acceptor, drawee or other payor by or on behalf of the holder.

\* \* \*

(3) [Presentment] may be made

(a) to any one or two or more makers, acceptors, drawees or other payors; or

\* \* \*."

Thus, it is clear that demand upon three of the six comakers was sufficient. Plaintiff argues that the above code section is not controlling because it applies only to negotiable instruments, while "a letter of credit is not a negotiable instrument." However, Stathis made a demand for payment on the March note, not on the letter of credit. Therefore, the relevant inquiry is whether the note, not the letter of credit, was negotiable, and we think it clearly was—particularly in view of the fact that it was ultimately negotiated to plaintiff. (Also see Ill. Rev. Stat. 1979, ch. 26, par. 3—104(1).) We therefore hold that the fact that the wives were not given individual notices was not a proper basis for dishonoring the letter of credit.

Plaintiff also contends that Stathis did not comply with that portion of paragraph 4 which required Stathis to submit his affidavit that "demand has been made upon the makers of the note for payment *according to its accelerated maturity.*" (Emphasis added.) In attempted compliance with this provision, Stathis submitted his affidavit stating:

"That heretofore, on April 2, 1974, the undersigned mailed a written notice of default to the makers of said note, therein and thereby

demanding that said makers cure their default under said note by no later than April 8, 1974, and further putting said makers on notice that should they fail to cure their said default by the time stipulated, the entire principal and all interest due under said note would be deemed automatically due and payable, without further notice to said makers."

Stathis' affidavit further stated:

"That more than ten (10) days have passed since the mailing of the aforesaid notices and demand letters, and that said makers of said note have failed to cure the acts of default set forth and described in said notices and demand letters, and have failed to make payment to the undersigned of the principal and/or interest due under said note according to its accelerated maturity."

In addition, Stathis submitted a copy of the demand letter from his attorney, dated April 2, 1974, which stated in relevant part:

"In view of the fact that you have not made payment of the first installment of interest due under said note, you are at present in default thereunder. Accordingly, you are hereby put on notice that unless you pay to GUS STATHIS the sum of $46,000, representing the interest due under said note to March 30, 1974, by no later than midnight of April 8, 1974, * * * the entire principal and all interest due under said note shall be deemed automatically accelerated and immediately due and payable, without further notice to you."

Plaintiff argues that these documents were noncompliant because they merely warned that acceleration would occur at a future date unless the default as to the first interest installment was cured; whereas, the credit required the announcement of acceleration with a demand for full payment on the principal and interest. We note that while section 5—109(2) of the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, par. 5—109(2)) provides that the issuer of a letter of credit "must examine documents with care so as to ascertain that on their face they appear to comply with the terms of the credit," it does not specify what is required for compliance with the terms of a letter of credit. In any event, we believe that the accompanying documents submitted by Stathis reasonably complied with those terms and that this should have been evident to plaintiff from careful examination of the documents on their face.

Although the traditional standard in letter of credit transactions is one of strict compliance with the terms of the credit by the party entitled to draw against the letter (*Courtaulds North America, Inc. v. North Carolina National Bank* (4th Cir. 1975), 528 F.2d 802; *Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie Du Papier (RAKTA)* (2d Cir. 1974), 508 F.2d 969; *Venizelos, S.A. v. Chase Manhattan Bank* (2d Cir. 1970), 425 F.2d 461), a number of courts have held that insignificant

variance between the letter of credit requirements and the documents submitted in compliance therewith is permissible (see *Flagship Cruises, Ltd. v. New England Merchants National Bank* (1st Cir. 1978), 569 F.2d 699; *Banco Espanol de Credito v. State Street Bank & Trust Co.* (1st Cir. 1967), 385 F.2d 230; *U.S. Industries, Inc. v. Second New Haven Bank* (D. Conn. 1978), 462 F. Supp. 662; *CNA Mortgage Investors, Ltd. v. Hamilton National Bank* (Tenn. App. 1975), 540 S.W.2d 238; *Talbot v. Bank of Hendersonville* (Tenn. App. 1972), 495 S.W.2d 548; *Laudisi v. American Exchange National Bank* (1924), 239 N.Y. 234, 146 N.E. 347).

Our position that the documents in the instant case reasonably comply with the terms of the credit is supported by *U.S. Industries, Inc. v. Second New Haven Bank*. In that case, defendant bank issued a letter of credit in favor of plaintiff covering certain goods to be shipped by plaintiff thereafter. The letter of credit required, *inter alia*, that any draft be accompanied by the proper invoice. It also instructed plaintiff that:

> "Drafts must be accompanied by your certified statement that the drawing represents payment of goods, which have been duly shipped * * *, and for which payments has been demanded and not received within seven (7) days of such shipment." (462 F. Supp. 662, 663.)

Plaintiff's demand letter did not explicitly certify that payment had been demanded of defendant bank's customer. That letter stated:

> "We certify that the accompanying drafts represent drawings in payment for the merchandise duly shipped * * * and for which payment has not been received * * * within seven (7) days of such shipment." (462 F. Supp. 662, 663.)

Noting, however, that references to demand for payment had been made by plaintiff in the accompanying invoices, the court stated:

> "In the present case, although the plaintiff did not explicitly certify that a demand for payment had been made, the invoices attached to the demand letter indicated that such a demand had been made. Thus, on their face, the submitted documents put the defendant on notice that the plaintiff had made the required demand for payment. While a certified statement helps ensure a high degree of truthfulness and reliability in the representations so certified, inasmuch as the plaintiff in this case submitted copies of the original invoices we think that purpose has been served. Under the facts of the present case, this Court finds that the submission of the invoices in lieu of a certified statement of demand does not run afoul of the rule of strict compliance." 462 F. Supp. 662, 664.

■■ We think it clear that a reading of Stathis' demand letter together with the affidavit attached to the sight draft satisfied the requirement that demand be made according to the note's accelerated maturity. If, as

plaintiff contends, Stathis' letter was only a warning, we note that his affidavit informed plaintiff that this warning was ignored and the demand for payment was not met. Moreover, if payment were made, Stathis would have had no reason to request that the letter of credit be honored, and it is not contended by plaintiff or indicated in the record that any payment was made. From plaintiff's perspective, therefore, the conditional language of the demand letter should have been disregarded, leaving as relevant to plaintiff's inquiry the reference to acceleration. In this regard, we believe that by reading this reference with the affidavit, plaintiff could reasonably have determined that the letter effectively announced acceleration and demanded full payment of interest and principal, as required by the letter of credit. It appears to us that the demand letter was intended by Stathis as a request for payment of the note if the makers failed to cure acts of default and, indeed, that the warning carried such a demand with it. Plaintiff's reading to the contrary makes an excessively fine distinction in light of the affidavit accompanying the letter and, considering the entirety of the circumstances, we conclude that the documents submitted by Stathis did not deviate significantly from the requirements of the letter of credit and that "on their face they appear to comply with the terms of the credit" as required by section 5—109(2) of the Code. Plaintiff was not therefore justified in dishonoring Stathis' request for payment.

Parenthetically, it should be noted that since the documents were reasonably compliant, it appears that under the Code plaintiff would not lose its right of reimbursement for any payment made under the letter of credit. Ill. Rev. Stat. 1979, ch. 26, par. 5—114(3).

For the reasons stated, we reverse the order appealed from which granted summary judgment to plaintiff and denied it to defendant Stathis. However, because said order and the briefs of the parties indicate that the trial court, in granting summary judgment, was not required to and did not consider other arguments raised by plaintiff—some of which apparently were in opposition to defendant Stathis' motion for summary judgment—this matter is remanded to the trial court for further consideration consistent with the content of this opinion.

Reversed and remanded.

LORENZ and WILSON, JJ., concur.