AMERICAN EMPLOYERS INSURANCE COMPANY, Plaintiff,

v.

PIONEER BANK AND TRUST COMPANY, Defendant.

No. 81 C 4308.

United States District Court, N. D. Illinois, E. D.

Dec. 18, 1981.

Stephen M. Hallenbeck, Randall L. Marmor, Gilmartin, Hallenbeck & Schroeder, Ltd., Chicago, Ill., for plaintiff.

David A. Kallick, Hurley & Kallick, Ltd., Northfield, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

American Employers Insurance Company ("American Employers") sues Pioneer Bank and Trust Company ("Pioneer") alleging the wrongful dishonor of drafts presented under each of three irrevocable letters of credit issued by Pioneer. American Employers has moved for summary judgment and Pioneer has filed a cross motion to dismiss the Complaint. For the reasons stated in this memorandum opinion and order, Pioneer's motion is denied and American Employers' motion is granted in part and denied in part.

*Facts*

On November 1, 1974 Pioneer (the issuer) issued an Irrevocable Letter of Credit (the "1974 Letter") in favor of American Employers (the beneficiary) for the account of Jenkins Industries, Inc. ("Jenkins," the customer). Under its terms the 1974 Letter was automatically extended from year to year unless Pioneer provided American Employers with 30 days' notice before an anniversary date. Payment under the 1974 Letter was conditioned upon American Employers' presentation of a sight draft demanding payment and an accompanying statement:

> that [American Employers], as Surety, have executed one or more bonds on behalf of Jenkins Industries, Inc. and that a claim has been made or a situation exists under which, in the sole judgment of [American Employers], claim may be made or loss or expense sustained under said bond and that monies represented by [American Employers'] drafts are required in the discretion of [American Employers] for its protection under said bond(s) or for payment of premiums.

On May 21, 1975 Pioneer issued two additional Irrevocable Letters of Credit (the "1975 Letters") employing the identical set of terms and conditions. They differed only in their principal amounts and in their being issued for the account of "Jenkins Industries, Inc., a general partner, and S & A Mining Associates, a limited partner," rather than Jenkins alone.

On July 23, 1981[1] American Employers July 21 and accompanying statements dated July 23, demanding payment under each of the letters of credit. Each statement referred to the execution of bonds on behalf of Jenkins, and each draft directed Pioneer to charge Jenkins' account.

Under Ill.Rev.Stat. ch. 26, § 5–112(1) ("Section 5–112(1)") Pioneer had until the close of business July 28 to honor American Employers' demand. When Pioneer failed to do so American Employers filed suit July 29.

### American Employers' Contentions

American Employers asserts that:

(1) All three letters of credit remained in effect in 1981 because Pioneer had never given notice of cancellation.

(2) American Employers provided Pioneer with a sight draft and accompanying statement in full compliance with each letter of credit.

(3) Pioneer's failure to respond amounted to a dishonor of the demand.

(4) American Employers is therefore entitled to full payment under the terms of the letters of credit.

As this opinion will reflect those arguments are, with a single (though important) limitation, unanswerable as a matter of law.

### Pioneer's Responses

Pioneer counters with a number of defenses. For the most part they are little short of frivolous.

1. Each date without a year designation is a 1981 date.

2. This is a diversity action involving a contract negotiated, executed and to be performed in the State of Illinois. Illinois choice-of-law rules apply under *Klaxon Co. v. Stentor Mfg. Co.*,

Initially Pioneer seeks dismissal because American Employers asks specific performance though it has an adequate remedy at law. That argument is wholly groundless, given the prayer for *damages* in each of the Complaint's three counts.

Pioneer next points to claimed defects in the documentation presented by American Employers:

(1) Each of the 1975 Letters requires a sight draft accompanied by a statement that American Employers as surety has "executed one or more bonds on behalf of Jenkins Industries, Inc., a general partner, and S & A Mining Associates [S & A], a limited partner...." Pioneer asserts the actual sight drafts and statements are insufficient because they disclose bonds issued on behalf of Jenkins alone.

(2) All three letters of credit call for a statement that "a claim has been made or a situation exists under which ... claim may be made or loss or expense sustained...." Pioneer attacks American Employers' statement as insufficient because it did not adequately explain the existing situation giving rise to the potential claim.

American Employers first retorts that Pioneer has waived the right to argue the demand did not conform to the letters of credit. There is no doubt that Pioneer dishonored American Employers' demand. Section 5–112(1) provides:[2]

A bank to which a documentary draft or demand for payment is presented under a credit may without dishonor of the draft, demand or credit

(a) defer honor until the close of the third banking day following receipt of the documents; and

(b) further defer honor if the presenter has expressly or impliedly consented thereto.

313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), and those rules look to Illinois substantive law. *Cook Associates, Inc. v. Colonial Broach & Machine Co.*, 14 Ill.App.3d 965, 971, 304 N.E.2d 27, 31–32 (1st Dist. 1973).

Failure to honor within the time here specified constitutes dishonor of the draft or demand and of the credit.

Pioneer did not honor the demand within the time provided and American Employers did not agree to an extension.

Not only did Pioneer dishonor the draft, but it never gave American Employers a statement of its reasons for doing so. American Employers says that failure constitutes a waiver under *First Arlington National Bank v. Stathis*, 90 Ill.App.3d 802, 46 Ill.Dec. 175, 413 N.E.2d 1288 (1st Dist. 1980). There Stathis had entered into an agreement to sell real estate to a group of investors, who caused First Arlington National Bank (the "Bank") to issue a letter of credit in favor of Stathis. When the investors defaulted on their obligation to pay Stathis, Stathis demanded payment of the Bank. Four days after the demand the Bank wrote Stathis refusing to pay the letter of credit, explaining how his accompanying statement had not satisfied the conditions of the letter. Several days later the Bank again wrote Stathis another letter stating an additional reason for its refusal to honor his demand.

On appeal the Bank argued not only the reasons originally provided to Stathis but two additional requirements of the letter of credit Stathis had not satisfied. As to the objections the Bank had raised only after suit was filed, the court held (90 Ill.App.3d at 812, 46 Ill.Dec. at 183, 413 N.E.2d at 1296):

We note, however, that plaintiff made none of these objections in its correspondence with Stathis wherein it originally refused to honor the credit. Those objections were therefore waived and cannot now be asserted.

American Employers urges that Pioneer has similarly waived *all* objections to its demand.

▪ That argument has force as to many kinds of defective compliance by a beneficiary. In *First Arlington* the Bank was held to have waived all objections not specifically stated in its pre-litigation refusal to honor the letter of credit. It should

follow a fortiori that an issuer's failure to present *any* objections waives *all* objections. If *First Arlington* were not so applied, the issuer would be better off to raise *no* objections. But the whole point of requiring a response is·to enable the beneficiary to correct any curable defects. By failing to provide any indication of why an issuer is dishonoring a demand the issuer forces the beneficiary to file suit. *See Barclays Bank D.C.O. v. Mercantile National Bank*, 481 F.2d 1224, 1236–37 (5th Cir. 1973).

*First Arlington* is further supported by the Illinois Code comment to Section 5–114:

A party may be precluded from raising the issue of conformity on grounds of waiver or estoppel. *Continental National Bank v. National City Bank*, 69 F.2d 312 (9th Cir. 1934); *Lamborn v. National Bank of Commerce*, 276 U.S. 469, 48 S.Ct. 378 [72 L.Ed. 657] (1928); *Consolidated Sales Co. v. Bank of Hampton Roads*, 193 Va. 307, 68 S.E.2d 652 (1952).

Other jurisdictions are in accord. *Barclays Bank D.C.O. v. Mercantile National Bank*, 481 F.2d 1224 (5th Cir. 1973); *Chase Manhattan Bank v. Equibank*, 550 F.2d 882 (3d Cir. 1977).

How does *First Arlington* serve American Employers? As to the 1975 Letters, not at all. If the disparity between the Letters' terms (bonds on behalf of Jenkins and S & A) and the actual bonds (solely on behalf of Jenkins) is material, American Employers could not have cured that flaw had Pioneer identified it in response to the demand for payment. Waiver notions would therefore play no part in evaluating Pioneer's failure to state that reason for dishonoring the drafts.

▪ Neither party has provided any real assistance on that score. American Employers simply asserts without support that Pioneer "has misconstrued the language" of the 1975 Letters. But at best the Letters are ambiguous. On a summary judgment motion all reasonable inferences from the facts are to be drawn against the movant.

This Court can reasonably posit a situation exemplified by the following scenario:[3]

It is not uncommon for a limited partnership to be entered into between a general partner whose major contribution is the rendition of services and a limited partner whose entire contribution is financial and who does not want to place his or its total resources at the risk of the venture. Assume a general partner with limited resources (in this hypothesis Jenkins) that invests say $20,000 in a partnership that goes into a $1 million deal, so that the limited partner (here S & A) invests $980,000. Jenkins' 2% interest in the partnership is of course worth $20,000. Under such circumstances a bank might well commit itself on a letter of credit looking to the $1 million net worth partnership (so that it would underwrite bonds issued on behalf of Jenkins as general partner *and* S & A as limited), but not on a letter of credit supported by Jenkins' $20,000 partnership interest and any other net worth Jenkins had (all that the bank could look to where the bond had been issued solely on Jenkins' behalf).[4]

American Employers must suffer the consequences of its failure to eliminate any such possible factual issue, which could make its performance fatally non-conforming.

Pioneer however has also given the Court nothing to act on except its own speculation. When a summary judgment motion is filed Fed.R.Civ.P. ("Rule") 56 calls for affidavits to negate—or to pose—"genuine issues of material fact." Pioneer like American Employers has not explained anything of the circumstances of issuance of the 1975 Letters, anything that would cast light on the meaning of their terms. Its reply memorandum for the first time states (and not via affidavit at that) some of the facts—in-complete even then—as to S & A. Nonetheless, because the burden is on American Employers on its motion, Pioneer must prevail to this limited extent.

■ On the other hand, as to the alleged flaw in American Employers' statement as to potential claims on the bonds (a matter that applies to all three letters of credit):

(1) *First Arlington* requires the conclusion that Pioneer has waived its right to complain of that item, at worst a curable defect.

(2) Pioneer's position on the merits is baseless in any event. American Employers complied precisely with the terms of the letters of credit, and each of them specifically vested American Employers with the "sole judgment" and the "discretion" to make the determination as to potential claims. Pioneer seeks to rewrite the letter of credit, and this it cannot do.

Accordingly Pioneer must lose on this point as to the 1974 Letter and, if in the future American Employers can overcome the Jenkins-S & A problem, as to the 1975 Letters as well.

■ This opinion next turns to three more Pioneer defenses that were not waived by its silence at the time of dishonor. Each of them, though, is devoid of substance:

(1) In 1977 Jenkins underwent a reorganization under Chapter 11 of the Bankruptcy Act. Pioneer asserts:

Since the obligations of the parties may have been modified in the Chapter 11 proceeding the terms of the letters of credit may also have been modified. It was therefore necessary for Pioneer to ratify and reaffirm the letters of credit in order for them to continue in force and

---

3. This opinion imports no factual *findings* of any kind. What follows may be entirely fanciful. Because the parties have seen fit to leave the Court unencumbered by the actual facts, their resolution must await trial (or a further and better-supported summary judgment motion).

4. It should be observed that the hypothesis stated in the text is not the only possible alternative. By definition limited partner status means the absence of personal liability. It is thus also conceivable, for example, that facts could exist under which Pioneer's right to look to "S & A as limited partner" would be meaningless, so that a bond issued to Jenkins alone could conform to the 1975 Letters.

effect. Absent the request by plaintiff or Pioneer to ratify these letters of credit, they were cancelled by operation of law and are no longer in force or effect.

But that precise argument was rejected in *First Arlington*, where the beneficiary of the letter of credit had renegotiated the underlying transaction with certain of the customers (90 Ill.App.3d at 808, 46 Ill.Dec. at 180–81, 413 N.E.2d at 1293–94):

> In this regard, we note that an issuing bank is said to deal in documents and not in contract performance [citation omitted] and is under a duty to examine with care the documents submitted by the beneficiary to determine whether they comply on their face with the terms of the credit. [Citation omitted]. 'Generally, if the documents presented conform to the requirements of the credit, the issuer is not required or even permitted to go behind the documents before honoring the demands for payment' [citations omitted], and '[i]f a conforming presentation of documents is made, the issuer of a credit is obligated to pay without reference to the rights and obligations of the parties to the underlying contract' [citations omitted]. Thus, the obligation of the issuer to pay the beneficiary is completely independent of the underlying agreement between the beneficiary and the bank's customers. . . .

Pioneer must fail on the same grounds. Jenkins' Chapter 11 reorganization can in no way affect Pioneer's obligation to American Employers under the letters of credit.

(2) On August 16, 1977 American Employers notified Pioneer of three potential claims under the letters of credit. Pioneer argues that by waiting until 1981 to make its demand American Employers is barred by laches, but:

> (a) Pioneer presents no authority to support that position. It cites only the inapplicable decision in *National Surety Corporation v. Midland Bank & Trust*

*Corporation*, 408 F.Supp. 684 (D.N.J. 1976). *National Surety* involved a letter of credit subject to a statutory limitation of one year. Plaintiff's claim was held barred because the court held that statute applicable even to letters of credit otherwise automatically renewable on an annual basis. Plainly the holding is in apropos here. Indeed whatever force it might have had is wholly vitiated by the fact (mentioned by neither counsel) that the District Court was *reversed* on precisely that point, 551 F.2d 21 (3d Cir. 1977).

> (b) More significantly, laches must involve an unreasonable delay in the assertion of a claim that acts to a party's prejudice. Neither of those conditions is present. First, there is nothing to support the proposition that the passage of time was unreasonable. As of any anniversary date Pioneer was free to terminate its further exposure on the letters of credit. It did not do so. In fact American Employers sent two letters to Pioneer, on November 13, 1978 and October 6, 1980, confirming that the letters of credit were still in force. Pioneer was silent. Second, Pioneer shows no prejudice generated by the "delay" in demanding payment under the letters of credit.[5] It contends only that had it been aware of American Employers' claim earlier it would have taken action as to the Jenkins reorganization. But as already discussed, the Jenkins bankruptcy proceeding is irrelevant to Pioneer's duty to American Employers. Pioneer cannot escape the clear contractual obligation of the irrevocable letters of credit.

(3) Pioneer makes one last attempt to extract a defense from the Jenkins reorganization. It says this Court, as a court of equity, should not assist a party with unclean hands because:

---

**5.** American Employers says it did not delay the assertion of its claim. Rather its 1977 letters indicated only the potential for a claim, which did not ripen. Not until 1981 was American Employers sure it had to make a demand under the letters of credit. While if true that assertion would further undermine Pioneer's laches defense, this Court need not make any determination on that score to reject the defense.

**1360**

plaintiff has had the opportunity to remedy the situation which is apparently resulting in the forfeiture of the surety bonds. Plaintiff could have assisted Jenkins in completing the project relating to the issuance of the surety bonds and, therefore, avoid the forfeiture of these bonds. Instead, plaintiff elected to allow the surety bonds to be forfeited and to look to Pioneer and Jenkins for payment.

That argument again ignores the nature of Pioneer's obligation to American Employers: independent of and unaffected by the Jenkins reorganization. As the court put it in *Baker v. National Boulevard of Chicago*, 399 F.Supp. 1021, 1024 (N.D.Ill.1975) (cited in *First Arlington*, 90 Ill.App.3d at 807, 46 Ill.Dec. at 179, 413 N.E.2d at 1293):

> Three separate agreements are involved in the issuance of a letter of credit by the bank for the benefit of a beneficiary.... The first is the contract between the beneficiary ... and the customer ... which is the agreement underlying the letter of credit. Under the second contract, the customer procures a letter of credit, often from a bank, in return for consideration or collateral. The third agreement consists of the bank's agreement to pay the beneficiary the amount of the letter of credit, if the beneficiary complies with the terms of the credit.

If Pioneer wished to be informed of bankruptcy proceedings involving its customer Jenkins, it was free to provide for that contingency in the letters of credit. Pioneer fails to state a valid defense of unclean hands.

### Conclusion

Pioneer's motion to dismiss the Complaint is denied. As for American Employers' motion, except for the single issue affecting the 1975 Letters, there is no genuine issue of material fact. American Employers is entitled to a judgment as a matter of law as to the 1974 Letter. American Employers' motion for summary judgment under Rule 56 is granted as to liability on the 1974 Letter.