THE NORTHERN TRUST COMPANY, Plaintiff-Appellee, *v.* OXFORD SPEAKER COMPANY, Defendant-Appellant.

First District (3rd Division)   No. 81—0195

Opinion filed September 22, 1982.

Winston & Strawn, of Chicago (Frank O. Wetmore II, Robert E. English, and David W. Russell, of counsel), for appellant.

Baker & McKenzie, of Chicago (Francis D. Morrissey, James G. Barnes, and Terrence M. Johnson, of counsel), for appellee.

JUSTICE McGILLICUDDY delivered the opinion of the court:

This action was brought by The Northern Trust Company (Northern), the appellee, to recover losses it suffered after paying a documentary draft that was transferred to it by Oxford Speaker Company (Oxford), the appellant. The documentary draft, drawn against a letter of credit, had been dishonored by the issuer of the letter of credit; and Oxford had disclaimed liability to Northern. In its answer to Northern's complaint, Oxford raised affirmative defenses including waiver and estoppel.[1] The trial court granted summary judgment in favor of Northern, and this appeal followed.

---

[1]Oxford pleaded as additional affirmative defenses that Northern had not given timely notice of dishonor and that Oxford was discharged from liability pursuant to section 3—601(2) of the Uniform Commercial Code (Ill. Rev. Stat. 1977, ch. 26, par. 3—601(2)).

On appeal, Oxford contends that the court erred in entering summary judgment in favor of Northern because its equitable defenses barred Northern's legal bases for recovery and because material questions of fact existed with respect to those equitable defenses.

According to the pleadings and affidavits filed in the case at bar, Oxford agreed to sell speakers to an Indonesian company, C. V. Kawi Trading Company (Kawi). Kawi was to be responsible for shipping and freight, and the transaction was to be financed by an irrevocable international letter of credit in the amount of $49,000. Northern advised Oxford that a letter of credit had been issued on January 6, 1977, by the Banque de l'Indochine et de Suez (the Singapore bank). The credit, which had been applied for by Kawi's customer, Tong Wei Hang Trading Company (Tong Wei Hang), provided, however, that Oxford would arrange for shipping to Indonesia at its own expense.

Oxford's response in opposition to Northern's motion for summary judgment and the affidavit of David Davis, vice-president of Oxford, in support thereof, stated that on February 1, 1977, Davis met with Naran Patel, second vice-president and supervisor of Northern's letter of credit operations to ascertain and resolve the conflicts between the terms of the letter of credit and Oxford's agreement with Kawi. Davis informed Patel that Oxford was not familiar with letter of credit transactions and that Oxford did not want to be responsible for shipping the speakers. Patel assured Davis that Oxford could ship against the letter of credit and recover its shipping expenses if it followed Northern's instructions.

Oxford's response and Davis' affidavit further stated that Naran Patel provided written instructions regarding shipping arrangements and the preparation of documentary drafts. On March 29, 1977, Oxford shipped the speakers and documents, prepared in accordance with Patel's instructions, to Kawi's Los Angeles agent, James A. Barnhart, for further shipment of the speakers overseas. On April 1, 1977, another Northern employee prepared documents for Oxford assigning a portion of the letter of credit proceeds to Barnhart for the freight charges on the shipment of the speakers to the destination indicated in the letter of credit. Oxford paid Northern a minimal handling fee with respect to the shipping arrangements.

On April 5, 1977, Northern received from Barnhart drafts drawn against the letter of credit and the final shipping documents. The documents indicated that the speakers were to be discharged at Singapore. Northern refused to honor the drafts prepared by Barnhart and instead prepared a new documentary draft for Oxford's execution. On April 6, 1977, Oxford signed the draft in the amount of $48,667.96 as

drawer and as indorser; and Northern sent a telegram to the French American Banking Corporation of New York asking that bank to credit Northern's account in the amount of the draft and its charges and certifying that "all terms of the credit have been complied with." Northern was notified on April 21, 1977, that the Singapore bank had dishonored Oxford's draft because the speakers had been shipped to Singapore rather than Indonesia. Northern sent notice of the dishonor to Oxford on May 4, 1977,[2] and demanded repayment.

After Oxford disclaimed liability, Northern exercised its option to cure the shipping error. Tong Wei Hang agreed to purchase the speakers for $38,957.96. Northern then demanded that Oxford reimburse it in the amount of $9,710, the difference between the amount of the draft it had paid Oxford and the amount it had recovered from Tong Wei Hang. Northern filed the instant cause of action on May 1, 1979, and its motion for summary judgment was granted and judgment was entered in the amount of $12,373.84 consisting of principal of $9,710 and interest and incidental costs of $2,663.84.

The basis upon which the trial court granted summary judgment was not specified in the record. Northern had argued in its complaint and motion for summary judgment that it was entitled to recover based on its statutory right of recourse since the documentary draft had been dishonored and because Oxford had breached certain statutory warranties with respect to the draft. Specifically, Northern argued that Oxford as drawer and indorser on the documentary draft had engaged that upon the draft's dishonor and necessary notice of dishonor and protest, it would pay the amount of the draft to the holder. (Ill. Rev. Stat. 1977, ch. 26, pars. 3—413(2), 3—414(1).) Northern also relied on its right of recourse under banking laws that a customer who transfers an item and receives settlement or other consideration engages that upon dishonor and notice and protest, he will take up the item. (Ill. Rev. Stat. 1977, ch. 26, par. 4—207(2).) The statutory warranty that Oxford was alleged to have breached when it delivered the draft to Northern was that the conditions of the letter of credit had been complied with. Ill. Rev. Stat. 1977, ch. 26, par. 5—111(1).

As an affirmative defense and in its response in opposition to Northern's motion for summary judgment, Oxford argued that Northern, in its dealings with Oxford, waived the terms of the letter of credit and was estopped to deny that the documentary draft complied

[2]The affidavit of Naran Patel stated that Northern notified Oxford of the dishonor on May 2, 1977.

with the letter of credit. Oxford alleged that Northern had given it oral and written instructions with respect to drawing a documentary draft which would comply with the letter of credit; that Northern had assured Oxford that if Oxford followed its instructions, the discrepancies with respect to shipping would be resolved; that Northern had assembled and prepared the nonconforming documentary draft for Oxford's signature; and that Northern had informed and instructed Oxford that the documentation with the draft was proper. Oxford contended that it had a right to rely upon the expertise, guidance, assistance, instruction and direction of Northern with regard to the preparation and submission of the documentary draft; that Oxford had a right to believe that the draft would conform to the letter of credit requirements; and that Oxford had relied upon Northern's representations and assurances to its detriment.

◼ The first issue we must deal with on appeal is whether the equitable defenses of waiver and estoppel apply to letter of credit transactions. Section 1—103 of the Uniform Commercial Code provides that principles of law and equity, including the law relevant to estoppel, shall supplement the provisions of the Code unless displaced by particular provisions of the Code. (Ill. Rev. Stat. 1977, ch. 26, par. 1—103.) No provisions indicate that the doctrines of waiver or estoppel are inapplicable to letters of credit transactions (*Barclays Bank D.C.O. v. Mercantile National Bank* (5th Cir. 1973), 481 F.2d 1224, *cert. dismissed* (1974), 414 U.S. 1139, 39 L. Ed. 2d 96, 94 S. Ct. 888), and those defenses have been applied where proper factual settings existed (*e.g., U.S. Industries, Inc. v. Second New Haven Bank* (D. Conn. 1978), 462 F. Supp. 662; *North Valley Bank v. National Bank* (N.D. Ill. 1977), 437 F. Supp. 70). In *Barclays Bank D.C.O.*, the court therein recognized that it had a duty to apply equitable principles and to:

"*** construe Article 5 [Uniform Commercial Code—Letters of Credit], as well as the other rules relating to letters of credit not codified in this Article, in such a manner as to conform the rules to an underlying sense of fair play so that the expectations of the parties to a business transaction will not be frustrated by the application of a rule which is not grounded in sound policy considerations." 481 F.2d 1224, 1237.

Northern contends, however, that in the cases cited above the application of equitable defenses was conditioned upon a showing that, but for the bank's conduct, the drawer of the draft could have cured the defective draft before the letter of credit expired. Northern argues that in the instant case, Oxford could not have cured the ship-

ping defect since the letter of credit was due to expire on April 6, the speakers left California for Singapore on April 3, and the bill of lading indicating the erroneous destination was not received by Northern until April 5, 1977.[3]

Northern also relies on the case of *First National City Bank v. Klatzer* (N.Y. Sup. Ct. 1979), 28 U.C.C. Rep. 497. In *Klatzer* the plaintiff bank erroneously and carelessly paid out on a draft drawn pursuant to a letter of credit. The issuing bank refused to honor the draft due to defective documentation. The court held that the unilateral mistake by the plaintiff in paying out funds was sufficient to support a claim by the bank against the drawer of the dishonored draft for reimbursement.

We believe *Klatzer* is distinguishable from the instant case because in *Klatzer* the plaintiff bank merely operated as a collecting bank. In the case at bar, however, Northern, by its alleged conduct, became more than a collecting bank. Oxford alleges that Northern gave it advice and made certain assurances with regard to completion of the sales transaction and preparation of the necessary documents. It is because of these alleged actions that Northern may be barred from recovery.

■ We also reject Northern's attempt to limit the waiver and estoppel defenses to cases wherein the documentation defects could have been rectified within the time limits specified in the letters of credit. While it is true that the time for cure had not expired in the cases cited above, we do not believe that the defenses of waiver and estoppel should be limited to such specific circumstances.

■ Generally, the defense of waiver applies when a party intentionally relinquishes a known right or his conduct warrants an inference of such relinquishment. (*Lempera v. Karner* (1979), 79 Ill. App. 3d 221, 398 N.E.2d 224.) It is not the same as estoppel in that in a waiver it is not necessary that the party claiming the waiver should have been misled to his injury by the acts of the insurer, or that prejudice result to the party in whose favor the waiver operates. (*A-1 Cleaners & Dyers v. American Mutual Liability Insurance Co.* (1940), 307 Ill. App. 64, 30 N.E.2d 87.) Equitable estoppel is defined as the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in chancery, from asserting rights

---

[3]In its reply brief, Oxford states that it could prove at trial that the expiration date of the letter of credit had been extended to May 6, 1977. Oxford also states that it could prove that had Northern given it notice of the dishonor on April 21, 1977, Oxford could have cured the shipping defect by redirecting the speakers to the proper port.

which might otherwise have existed as against another person who has, on good faith, relied upon such conduct and has been led thereby to change his position for the worse. (*Ladd Construction Co. v. Insurance Co. of North America* (1979), 73 Ill. App. 3d 43, 391 N.E.2d 568; *Hartford Accident & Indemnity Co. v. D. F. Bast, Inc.* (1977), 56 Ill. App. 3d 960, 372 N.E.2d 829.) A fraudulent intent is not necessary to estoppel. When a person apparently adopts a position which reasonably misleads someone into detrimental reliance, that person can be estopped from avoiding that position, regardless of the intent of his actions, if to hold otherwise would have an unjust effect. *Shockley v. Ryder Truck Rental, Inc.* (1979), 74 Ill. App. 3d 89, 392 N.E.2d 675; see *Lincolnland Properties, Inc. v. Butterworth Apartments, Inc.* (1978), 65 Ill. App. 3d 907, 382 N.E.2d 1250 (promissory estoppel).

According to the affidavit of Oxford's vice president, David Davis, Davis informed Northern's employee, Naran Patel, that Oxford had no familiarity with letter of credit transactions and that Oxford would not complete the sales transaction with Kawi if Oxford was to be responsible for shipping arrangements and costs. Patel assured Davis that Oxford could ship against the letter of credit and recover its shipping costs if it followed Northern's instructions. Oxford also alleged that Patel provided oral and written instructions on how to ship the goods and prepare documentary drafts. Northern prepared the documentary draft for Oxford's signature and subsequently stated to the French American Banking Corporation of New York that all the terms of the letter of credit had been complied with.

■ Oxford also contended in its answer and response in opposition to the motion for summary judgment that it relied in good faith on Northern's assurances and expertise in order to comply with the letter of credit requirements; that it would not have participated in the sales transaction but for Northern's assurances and aid; and that its reliance was detrimental since the letter of credit conditions were not in fact complied with. Based on these allegations, we believe that genuine issues of material fact existed as to whether Northern should be estopped from claiming its legal rights to repayment after the draft was dishonored and whether Northern waived those rights by indicating that the terms of the letter of credit had been complied with. To find otherwise would have an unjust effect (*Schockley v. Ryder Truck Rental, Inc.*) and would not conform to a sense of fair play (*Barclays Bank D.C.O. v. Mercantile National Bank*).

■ Northern's final arguments in support of its summary judgment are that Oxford's recourse obligations could not be disclaimed by parol evidence and that Northern could not be obligated to Oxford

on the letter of credit absent Northern's written confirmation (Ill. Rev. Stat. 1977, ch. 26, pars. 5—103(1)(f), 5—104(1)). These arguments relate, however, to Northern's legal rights and obligations as codified in the Uniform Commercial Code. The equitable doctrines of waiver and estoppel bar the enforcement of a party's legal rights due to that party's conduct and, in the case of estoppel, the effect of that conduct on another party's actions. Thus Oxford's defenses to Northern's cause of action do not depend on whether Northern confirmed payment of the letter of credit in writing, and to support these defenses Oxford should be permitted to present evidence of its oral and written dealings and communications with Northern.

For the foregoing reasons, the summary judgment of the circuit court of Cook County is reversed and the cause is remanded for an evidentiary hearing on the issue of waiver and estoppel consistent with the views expressed herein.

Reversed and remanded.

WHITE, P. J., and RIZZI, J., concur.