**AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Plaintiff,**

v.

**HAMILTON INDUSTRIES INTERNATIONAL, INC., Banque De Paris, and Saudi Med Center, Ltd., Defendants.**

**No. 83 C 1536.**

United States District Court, N.D. Illinois, E.D.

Feb. 22, 1984.

Francis X. Grossi, Jr., Laurie G. MacFarlane, Katten, Muchin, Zavis, Pearl & Galler, Alan N. Salpeter, James D. Brusslan, Mayer Brown & Platt, Chicago, Ill., for plaintiff.

Shalom L. Kohn, Sara J. Gourley, Sidley & Austin, David C. Roston, Mary Rose Gage, Altheimer & Gray, Joel G. Chefitz, Stephen C. Neal, Michael R. Levinson, Kirkland & Ellis, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

WILLIAM T. HART, District Judge.

American National Bank ("ANB") brought this interpleader action on March 4, 1983, to resolve the relative rights of Hamilton Industries International, Inc. ("Hamilton"), Banque De Paris ("Paribas") and Saudi Med Center, Ltd. ("SMC") under an ANB letter of credit. Hamilton and Paribas have filed cross-claims that seek to establish their right to the $290,700 fund here at issue. In addition, Hamilton has filed a four count cross-claim against SMC, based upon the relationship which gave rise to the ANB letter of credit.

Subject matter jurisdiction exists in this action by virtue of diversity of citizenship. 28 U.S.C. § 1332(a)(3). Venue is proper with respect to the interpleader action in this District because ANB "resides" here

and issued the letter of credit in this District. 28 U.S.C. §§ 1391(a) and (c). Currently before the Court is SMC's challenge, in the form of a motion to dismiss, to the Court's personal jurisdiction over Hamilton's cross-claims against SMC. SMC did not respond to the interpleader complaint. Also before the Court are Hamilton's motions for summary judgment as to the interpleader complaint and the cross-claims of Paribas.

## I. Hamilton's Motions For Summary Judgment

### A. Facts

The facts necessary to decide Hamilton's motions are not in dispute. In August of 1982, Hamilton arranged for ANB to issue a letter of credit in the amount of $290,700. The letter of credit secured Hamilton's bid (as subcontractor) to supply SMC with equipment to be installed in a new academic area SMC was to build at King Saud University in Saudi Arabia. On August 11, 1982, ANB issued an "Irrevocable Straight Letter of Credit" (the "ANB credit") listing Hamilton as "applicant," SMC as "beneficiary" and "Paribas: Bahrain Branch" as "advising bank." The expiry date of the ANB credit is given as "March 15, 1983 at our counters in Chicago." The body of the credit, which describes the conditions upon which payment was to be made, contains the following statements:

> *Your* signed statement certifying that *you* have been called upon to make payment under *your* guaranty issued in favor of [SMC] ... We have issued the above letter of credit in *your* favor in consideration of your issuance of a letter of guarantee in favor of [SMC] for US $290,700 to expire on February 28, 1983, at the request of our customer [Hamilton] in accordance with Exhibit A attached herewith. (emphasis added).

Attached as Exhibit A was a "Form of Tender Letter of Guarantee" in favor of SMC, with blanks provided for the issuer's name and location. Paribas, through its

Bahrain Branch, issued this Tender Letter of Guarantee (the "Paribas guarantee"), in the amount of $290,700, on August 23, 1982. Pertinent portions of the Paribas guarantee state:

> (a) [W]e the Guarantor hereby unconditionally agrees [sic] to pay to you forthwith *following demand made by you in writing (which writing shall refer to the number and date of this letter of guarantee)* to our agent ...
>
> \* \* \* \* \* \*
>
> (d) This letter of guarantee shall remain valid and in full force and effect to the end of the 28 days of February, of the year of 1983 *by which time any claim thereunder must be received by the Guarantor's Agent.*
>
> \* \* \* \* \* \*
>
> (f) *The Guarantor's Agent must receive your written demand hereunder within the period of the effectiveness of this letter of guarantee set forth in paragraph (d) above at* P.O. 5993, Manama, State of Bahrain. (emphasis added).

On February 24, 1983, Paribas-Bahrain received a telephone call from SMC, demanding payment under the Paribas guarantee. On February 28, 1983 at 11:15 a.m. ANB received a cable dated February 24, 1983, from Paribas. The cable advised that Paribas had been called upon to make payment to SMC "under the terms of your letter of credit." Paribas also requested that the cable be treated "as a formal demand under the terms and conditions of your L/C [with supporting documents to be] forwarded to you in due course." At 10:02 p.m. local time, on February 28, 1983,[1] Paribas-Bahrain received a telex message from SMC dated February 28, 1983, reading as follows:

> Subject: King Saud Project—L/C from Hamilton Industries. This confirms the telephone conversation the undersigned had with you this afternoon, wherein it was requested that the letter of credit

---

1. The telex bears a date stamp "Mar 1 00821 '83," but, solely for the purposes of this motion, Hamilton has conceded that the telex was received by Paribas-Bahrain at 10:02 p.m. on February 28th.

established by Hamilton Industries in favor of SMC in connection with a bank guarantee on the above subject be called off.

On March 7, 1983, Paribas-Bahrain received a letter from SMC dated February 28, 1983 which demanded payment of the entire amount of the "guarantee," and which refers to the number and date of the guarantee.

On March 14, 1983, one day before the expiry date of its letter of credit, ANB received a letter dated February 28, 1983, together with a sight draft dated February 24, 1983, in which Paribas again demanded payment under the ANB credit.[2] The accompanying certification, also dated February 28, 1983, states: "We, Banque Paribas, Bahrain, certify that we have been called today 24 February 1983 upon to make payment under our guarantee . . . ."

In the interim period between ANB's receipt of Paribas' initial telex on February 28, 1983 and ANB's receipt of the documents later sent by Paribas, additional telexes were exchanged between the banks. A March 2, 1983 telex from Paribas advises ANB as to the manner in which Paribas desired payment to be made. A March 2, 1983 telex from ANB, referencing Paribas' initial demand for payment, states: "Unable to honor your demand due to request not conforming to Letter of Credit." On March 3, 1983, Paribas telexed ANB, requesting a description of specific nonconformities. On March 4, 1983, ANB replied: "You did not submit proper drafts or the required certification and beyond that we cannot advise you how to comply." In this telex, ANB also advised Paribas that it had filed the instant interpleader action. On March 7, 1983, Paribas responded, stating that ANB would be receiving shortly proper documents which had been recently mailed by Paribas. A March 8, 1983 telex from ANB indicates that ANB had not yet received these documents. Finally, on March 15, 1983, ANB acknowledged receipt of the documents sent by Paribas, but added "we cannot add further to our Telex of March 4, 1983, and await resolution of Court action." Paribas paid SMC the full amount of the guarantee on June 4, 1983.

### B. The Role of Paribas

ANB's letter of credit, on its face, raises a question as to the status of Paribas. While Paribas is listed as an advising [confirming] bank in the space provided on ANB's form, the body of the credit tends to indicate that Paribas is also the intended beneficiary of the ANB credit. For the purposes of its motion for summary judgment, Hamilton concedes that Paribas, rather than SMC, was the beneficiary of the ANB credit. However, before dealing with a motion for summary judgment against Paribas on the theory that Paribas is the beneficiary of the ANB credit, the Court must be satisfied that Paribas would not have any greater entitlement to the fund at issue if its role were that of a confirming bank.

A recent decision by the Second Circuit indicates that Paribas would enjoy no better rights in this action as a confirming bank then it would as a beneficiary. See *Voest-Alpine Internat'l Corp. v. Chase Manhattan Bank*, 707 F.2d 680 (2d Cir.1982). A beneficiary may exact payment under a letter of credit from an issuing bank despite a modification to the underlying contract which expands the beneficiary's liability. However, *Voest-Alpine* indicates that an issuing bank is entitled to demand strict compliance with the confirming bank's initial engagement to the ultimate beneficiary of the letter of credit, regardless of the confirming bank's modification of the conditions of that engagement. 707 F.2d at 684–85. This result is entirely reasonable, as any modification by the confirming bank would otherwise ex-

---

**2.** The cover letter, though bearing the date of February 28, 1983, refers to Paribas telexes sent to ANB on March 7, 1983 and March 2, 1983. This ambiguity is perhaps explained by the fact that Paribas initially forwarded documents with erroneous "1982" dates, then sent a second set of documents bearing corrected "1983" dates. Apparently, Paribas never revised the date on its cover letter.

tend the obligations of the issuer as well, while an extension of the beneficiary's obligations in no way affects the issuer. Since, as discussed below, Paribas never received a proper demand under its "guarantee" from SMC, Paribas would have no right to reimbursement from ANB, were it a confirming bank. Therefore, the Court examines what right to payment Paribas has as beneficiary of the ANB credit.

■ To evaluate Paribas' rights as beneficiary of the ANB credit, the Court must examine the nature of the Paribas guarantee. While it is axiomatic that in the standard letter of credit transaction the respective rights and duties of an issuer and beneficiary are wholly independent of the underlying contract and the issuer-customer contract, the present case involves an unusual combination of overlapping letter of credit transactions. Therefore, the Court must reject Paribas' characterization of its actions with regard to its payment to SMC as modifications of the underlying contract, with no effect on its right to receive payment from ANB.

■ The standard letter of credit transaction involves three independent contracts: (i) the issuer-customer contract, by which the issuer agrees to issue its credit in exchange for reimbursement from its customer and a fee; (ii) the credit itself, by which the issuer agrees to pay the beneficiary upon presentation of conforming documents; and (iii) the underlying contract between the customer and beneficiary, in which the customer's performance is secured by the letter of credit. *See, e.g., Bank of Newport v. First Nat'l Bank of Bismark*, 687 F.2d 1257, 1261 (8th Cir. 1982). In this tripartite transaction, a single contractual relationship is established between any two of the parties, without reference to the performance or breach of the other contracts. To allow that relationship to be affected by disturbances in the other contractual relationships would undermine the independence of each contract.

But in the present case, there exists more than a single contractual relationship between each of the parties. Rather than

extend a letter of credit directly to SMC, ANB chose to incorporate the Paribas guarantee into what would normally be the single contract (the credit) between issuer and beneficiary. Thus, there are two contractual relationships between Paribas and ANB; the relationship under the ANB credit and the relationship arising under the Paribas guarantee.

■ An examination of the Paribas guarantee indicates that this engagement is essentially a second letter of credit. Article 5 of the Uniform Commercial Code (the "UCC") applies to any bank engagement that either "conspicuously states that it is a letter of credit," Ill.Rev.Stat. ch. 26, § 5–102(1)(c), or "requires a documentary draft or a documentary demand for payment." § 5–102(1)(a). Thus, the fact that the instrument is entitled "guarantee" is not conclusive, despite the language in § 5–102(2) to the effect that Article 5 "does not apply ... to guarantees." The distinction between a standby letter of credit and a true guarantee is that the former is a direct obligation to pay upon "specified documents showing a default" while the latter is a secondary obligation requiring "proof of the fact of default." *Bank of North Carolina v. Rock Island Bank*, 570 F.2d 202, 206 n. 7 (7th Cir.1978). Illinois courts have also considered whether an issuer waives or retains all defenses normally available to a guarantor. *Pastor v. Nat'l Republic Bank of Chicago*, 76 Ill.2d 139, 28 Ill.Dec. 535, 390 N.E.2d 894, 897 (1979); *Stringer Const. Co. v. American Ins. Co.*, 102 Ill.App.3d 919, 58 Ill.Dec. 59, 64, 430 N.E.2d 1, 6 (1st Dist.1981).

■ Paribas expressly waived such guarantor's defenses in paragraph (c) of its engagement to SMC, describing its obligations as "unconditional and irrevocable." Further, in paragraph (a) of the engagement, Paribas agreed to pay SMC solely upon presentation of its documentary demand for payment. UCC Section 5–103(b) defines a documentary demand for payment to include a "notice of default" such as the demand identified in the Paribas

engagement. Therefore, the Paribas engagement fits squarely within the § 5-103(1)(a) definition of a letter of credit. *See Bank of North Carolina,* 570 F.2d at 207–208 (bank's engagement to purchase specified note from holder upon presentment, without more, is a letter of credit rather than a guarantee).

It is no accident that Judge Shadur has described the rights and duties of a confirming bank as those of an issuer of a separate letter of credit. "Continental [the confirming bank] acquired the 'rights' of an issuer-the right to collect from *its* customer, Banco [the issuing bank]. For Continental to acquire *that right* as to Banco, Section 5-109(2) imposed on it the *duty* to Banco (its customer) to examine the documents with care." *Instituto Nacional de Commercializacion Agricola v. Continental Ill. Nat'l Bank,* 530 F.Supp. 276 (N.D. Ill.1981) (emphasis in original). The transactions between ANB and Paribas fit uneasily into any mold except that of a single letter of credit, with Paribas acting as a confirming bank. To view these transactions as one letter of credit conditioned upon another does not yield a substantially different result. Paribas owed duties to ANB not normally present in a beneficiary-issuer relationship. These duties cannot be dismissed simply by noting that the ANB letter of credit is independent from any "underlying" transaction.

Paribas contends that it "deemed" each of SMC's three demands for payment to be sufficient demands under its engagement to SMC. Specifically, Paribas argues that it interpreted the guarantee, drafted by ANB, to allow for demand by telephone or telex with subsequent presentation of a documentary demand after the February 28, 1983 expiry date. But such an interpretation runs contrary to the express language of paragraph (f), that "The Guarantor's Agent [Paribas-Bahrain] must *receive*

*your written demand* hereunder *within the period of effectiveness* of this letter of guarantee." Paribas' interpretation is also contrary to the traditional requirement of strict compliance with expiry dates in letters of credit. *Consolidated Aluminum Corp. v. Bank of Virginia,* 544 F.Supp. 386 (D.Md.1982), *aff'd,* 704 F.2d 136 (4th Cir.1983). Paribas' payment of the guarantee to SMC, despite its late tender of the documentary demand, does not in any way evidence the correctness of its argued interpretation. The payment only evidences Paribas' willingness to waive an express condition of payment. But such a waiver does not correspondingly expand the liability of ANB. *Chase Manhattan Bank v. Equibank,* 550 F.2d 882, 886–87 (3d Cir. 1977) (issuer who waives condition of payment jeopardizes right to reimbursement from its customer).

██ The decisions relied upon by Paribas do not require that ANB be compelled to pay Paribas without regard to the customer-issuer relations arising out of the Paribas guarantee.[3] The ANB letter of credit incorporated the terms of the Paribas guarantee as a condition of payment. "[T]he obligation to pay does not depend upon the underlying contract *unless* it is so provided in the letter of credit." *Pastor,* 76 Ill.2d 139, 28 Ill.Dec. at 540, 390 N.E.2d at 899 (emphasis added). ANB provided in its credit that its obligation depended upon compliance with the Paribas guarantee and certification by Paribas of that compliance. Paribas' right to payment was simply not independent of its relationship with ANB, as might otherwise be the case.

## C. Paribas' Documentary Demand

██ Moreover, even if the relationship between Paribas and ANB were disregarded, payment could not be *compelled* because Paribas presented a document that

---

**3.** For example, in *First Arlington Nat'l Bank v. Stathis,* 90 Ill.App.3d 802, 46 Ill.Dec. 175, 413 N.E.2d 1288 (1st Dist.1980), the Illinois Appellate Court compelled the issuer's payment although, before demanding payment, the beneficiary released four of the six makers of the note which supported the credit. There the beneficiary's waiver of his own right affected neither his right to payment under the credit nor the issuer's right of reimbursement from its customer.

was "forged or fraudulent" within the meaning of § 5–114(2). Paribas notified ANB by telex that it had been called upon to pay SMC. Paribas followed this demand with a signed certification stating that it had been called on under its "guarantee" to pay SMC on February 24, 1983. Those statements were contrary to the facts.

Further, Paribas never received a proper written demand for payment from SMC prior to the expiry date of its engagement. The parties here "deal in documents not in goods." It is therefore essential that all documents submitted be in compliance with the terms of the engagements.

The only possible timely written demand for payment of all or any part of the credit extended was made by a telex message from SMC which Paribas received at 10:02 p.m. (outside the usual banking hours) on February 28, 1983, the last day the guarantee was in effect. In order to be effective the telex message must constitute an unambiguous "written demand"[4] for payment of all or part of the guarantee and must "refer to the number and date of the letter of guarantee" as required by the guarantee. The telex message did not meet any of these very minimal, but essential, requirements (as do subsequent but not timely written demands). Accordingly, receipt of the telex message did not give rise to an obligation on the part of Paribas to pay SMC, though it did subsequently decide to pay SMC on June 4, 1983 (after it was aware that ANB challenged its right to pay). Consequently, Paribas could not, under the terms of the ANB letter of credit, demand payment from ANB.

Therefore, Paribas' representations that it had been called upon to make payment *under the* guarantee were false. The submission of false documentation has been repeatedly held to justify dishonor under § 5–114(2). *Voest-Alpine Int'l Corp.*, 707 F.2d at 686; *Harris Corp. v. Nat'l Iranian Radio*, 691 F.2d 1344, 1356 (11th Cir.1982);

*Bank of Newport*, 687 F.2d at 1264–65; *Prutscher v. Fidelity Int'l Bank*, 502 F.Supp. 535 (S.D.N.Y.1980).

Paribas correctly contends that Illinois courts[5] take a very narrow view of fraud that is sufficient to permit dishonor, restricting dishonor to those frauds which "so vitiate the entire transaction that the legitimate purpose of the independence of the issuer's obligation is no longer served." *First Arlington Nat'l Bank*, 90 Ill.App.3d 802, 46 Ill.Dec. at 182, 413 N.E.2d at 1295. But the false certification made by Paribas fits within this narrow category. ANB's obligation to pay Paribas was nearly without limitation. ANB had reserved to itself only two protections; the March 15, 1983 expiry date of the credit and the requirement of a written certification from Paribas of compliance with the requirements of this guarantee. Paribas' purported waiver of the terms of its guarantee and submission of a false certification removed both of these limitations on ANB's liability. By vitiating the transaction between Paribas and ANB, Paribas justified ANB's refusal to honor the Paribas demand.

Further, characterizing the presentation of false demand documents as fraud does not in any way undercut the independence of the letter of credit, as would an expansive definition of fraud in the underlying transaction. UCC § 5–114(2) separately defines "fraud in the transaction" and "forged or fraudulent" documentation. The rule that issuers deal in documents rather than facts is consistent with the requirement that documents must be what they purport to be. H. Harfield, *Letters of Credit*, 41 (1979). Unlike the defense of fraud in the underlying transaction, a defense of fraudulent documentation does not embroil the issuer in the underlying transaction. While the line between the two may sometimes be difficult to draw, false documentation in all cases deprives the is-

**4.** The language of the telex is open to the interpretation that it was intended to cancel an earlier telephone message of that day rather than to contain an oral demand for full or part payment of a specific sum under a specific guarantee.

**5.** In this diversity action, Illinois law controls on issues of performance of a letter of credit issued in this state.

suer (and consequently the customer) of the sole protection afforded by the credit.

The ANB letter of credit is not a "sole judgment" and discretion letter of credit, as was the Paribas guarantee. ANB incorporated the terms of the Paribas "guarantee" into its credit.[6] The ANB credit calls for certification that Paribas received a proper demand "under your guaranty." By certifying that it had complied with the terms of the guarantee, Paribas so vitiated "the entire transaction that the legitimate purpose of the independence of the issuer's obligation is no longer served." [7]

■■■■ Paribas also contends that ANB waived any right to claim fraud by failing to notify Paribas of the asserted nonconformity at the time of presentment. It is generally held that reliance upon certain enumerated grounds for dishonor of a letter of credit at the time of presentment waives other grounds of dishonor not asserted. *Stathis,* 413 N.E.2d at 1296; *Northern Trust Co. v. Oxford Speaker Co.,* 109 Ill.App.3d 433, 65 Ill.Dec. 113, 440 N.E.2d 968 (1st Dist.1982). The parties disagree as to whether the defenses of waiver and estoppel extend to incurable as well as curable nonconformities in documentation and whether Paribas could have cured the non-conformities in its documentation prior to the March 15, 1983 expiry date. The Court need not decide these issues, as the defenses of waiver and estoppel have no application to the case at hand. Waiver and estoppel are equitable in nature. *Northern Trust Co.,* 109 Ill.App.3d 433, 65 Ill.Dec. at 116–17, 440 N.E.2d at 971–72. A party who has knowingly submitted false documents to the issuer presents a classic case of a party with unclean hands. Paribas' conduct precludes any equitable basis for recovery.

ANB's motion for summary judgment must, therefore, be granted. Were Paribas only a confirming bank, it would have no right to the funds at issue. Looking to its rights as a beneficiary, the Court is convinced that Paribas forfeited any rights to the ANB credit for two separate reasons. Since more than a single issuer-beneficiary relation existed between ANB and Paribas in this, rather unique, transaction involving two linked letters of credit, Paribas' waiver of the conditions of payment under its "guarantee" deprived it of a right to payment under the ANB credit. Second, Paribas' submission of a false documentary demand for payment of the ANB credit was fraudulent. Under Illinois law, Paribas' false statement provided ANB with a defense to which the equitable principals of waiver and estoppel do not apply.

## II. SMC's Motion to Dismiss

SMC has moved to dismiss Hamilton's cross-claims against it on three separate grounds: (i) lack of personal jurisdiction; (ii) insufficiency of service of process; and (iii) improper venue. As discussed below, the Court finds that it has personal jurisdiction over SMC and that service over SMC was properly effected, but transfers the cross-claims based upon the inconvenience of this forum.

■■■■ The burden of pleading and proving personal jurisdiction is upon Hamilton, the party asserting jurisdiction over

---

**6.** Illinois courts have observed that an issuer becomes dependent upon the veracity of its beneficiary when it is willing to rely upon the beneficiary's certification of the happening of an event, rather than demanding documentation. *Pastor,* 76 Ill.2d 139, 28 Ill.Dec. at 538, 390 N.E.2d at 897. *See also American Employers Ins. v. Pioneer Bank & Trust,* 538 F.Supp. 1354, 1358 (N.D.Ill.1981) (To protect issuer from arguably false certification in "sole discretion" credits is to impermissibly rewrite them). ANB did not, as it might have, require Paribas to document its receipt of a proper demand from SMC by forwarding the SMC demand documents.

**7.** An issuer acting in good faith may honor a demand for payment despite notification from the customer of fraud, forgery or other defects not apparent on the face of documents but a court of appropriate jurisdiction may enjoin such honor. UCC § 5–114(2)(b). This provision contemplates that a customer such as Hamilton may challenge in court fraud, forgery or other defects not apparent on the face of the documents demanding payment of a letter of credit even if an issuer might be permitted to ignore them absent a court order. See 3 Anderson, *Uniform Commercial Code* § 5–114:9.

the cross-claims. However, all factual conflicts in affidavits are to be resolved in favor of the party asserting jurisdiction. *Neiman v. Rudolf Wolff & Co., Ltd.,* 619 F.2d 1189, 1190 (7th Cir.), *cert. denied,* 449 U.S. 920, 101 S.Ct. 319, 66 L.Ed.2d 148 (1980).

## A. Facts

Reading the pleadings and affidavits supplied by both parties in a light most favorable to Hamilton reveals the following. SMC is a Saudi Arabian corporation with its principal place of business in Saudi Arabia. Hamilton is a Delaware corporation with its principal place of business in Wisconsin. In April of 1982, SMC solicited bids from Hamilton for equipment to be installed in a new academic area of King Saud University in Saudi Arabia. Negotiations conducted that same month in Riyadh, Saudi Arabia were followed by a series of communications between SMC, in Saudi Arabia, and Hamilton, in Wisconsin. In July of 1982, Hamilton met in London with SMC to submit its bid. Correspondence between Wisconsin and Saudi Arabia continued through December, 1982, when SMC delivered its Letter of Intent and a draft of the supply contract to Hamilton representatives then visiting Riyadh.

Shortly thereafter, Hamilton's Chicago attorney mailed a counter-draft of the supply contract to SMC. At this point, the location to which SMC directed its correspondence shifted from Wisconsin to Chicago. In addition to corresponding with Hamilton in Chicago, SMC representatives met with Hamilton's representatives and its attorneys on two separate occasions, January 24–29, 1983 and February 10–23, 1983. These meetings were held in Chicago at the request of Hamilton's attorneys, who refused to meet with SMC in London as previously arranged.

Although a contract was never executed by SMC and Hamilton, Hamilton's bid called for fabrication of the equipment in Wisconsin, with SMC to accept delivery at Baltimore, Maryland. Hamilton was also to send two "project managers" and an undesignated number of technicians to Saudi Arabia, at SMC's expense, to supervise the installation.

## B. Illinois Long-Arm Statute

In this, a diversity action, this Court can assert personal jurisdiction over SMC only if the courts of Illinois, the forum state, would exercise jurisdiction over SMC. *Lakeside Bridge & Steel Co. v. Mountain State Const. Co.,* 597 F.2d 596, 598 (7th Cir.), *cert. denied,* 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980). Therefore, contrary to Hamilton's assertion, SMC's contacts with the United States as a whole are not relevant to a determination of whether this Court may assert personal jurisdiction. *Ingersoll Milling Machine Co. v. J.E. Bernard & Co.,* 508 F.Supp. 907, 910 n. 4 (N.D.Ill.1981). Under the Illinois long-arm statute, one basis for personal jurisdiction over a nonresident, the only basis here applicable, is "the transaction of any business" by the nonresident in Illinois. Ill.Rev.Stat. ch. 110, § 17(1)(a).

In deciding whether a nonresident has transacted business in the state, Illinois courts have focused primarily upon two factors. The first factor looks to which of the parties initiated the relationship at issue. Personal jurisdiction is more likely to exist where the nonresident initiates the relationship rather than when the resident initiates the relationship. *Compare United Air Lines, Inc. v. Conductron Corp.,* 69 Ill.App.3d 847, 26 Ill.Dec. 344, 387 N.E.2d 1272 (1st Dist.1979) *with Artoe v. Mann,* 36 Ill.App.3d 204, 343 N.E.2d 647 (1st Dist. 1976). While SMC initiated its relationship with Hamilton, at the time of initiation that relationship had no connection with Illinois. SMC dealt with Hamilton solely in Wisconsin and in Saudi Arabia until Hamilton shifted the focus of this extant relationship from Wisconsin to Illinois.

The second factor considered by Illinois courts is the place where the contract is to be performed. Performance in Illinois militates in favor of the assertion of jurisdiction. *See, e.g., Ward v. Formex,* 27 Ill.App.3d 22, 325 N.E.2d 812 (2d Dist.

1975). Here, a major portion of the contract was to be performed in Wisconsin. Thus, neither of the key factors looked to by Illinois courts support the assertion of personal jurisdiction over SMC.

 There remain to be considered, however, the visits of SMC representatives to Chicago in early 1983. Personal jurisdiction is established when a nonresident enters the state and "engages in negotiations of some substance regarding the transaction for which the cause of action arises." *Ronco, Inc. v. Plastics, Inc.*, 539 F.Supp. 391, 396 (N.D.Ill.1982). *See also Wisconsin Electrical Mfg. Co., Inc. v. Pennant Products*, 619 F.2d 676 (7th Cir.1980); *Hyatt Int'l Corp. v. Inversiones Los Jabillos C.A.*, 558 F.Supp. 932 (N.D.Ill.1982). SMC's two, rather extended, visits to Chicago constitute the transaction of business within Illinois, despite the fact that those visits were made at the behest of Hamilton. *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209 (7th Cir.1984). Therefore, the Court may exercise personal jurisdiction over SMC.[8]

 SMC has also objected to Hamilton's efforts to obtain service of process upon SMC at its offices in Saudi Arabia and West Germany.[9] The affidavits presented indicate that Hamilton personally served an employee of SMC at SMC's offices. There is some dispute over whether this employee was the executive assistant to the president of SMC or merely a secretary/stenographer for four high level SMC executives. In either case, service was proper. *A–Z Equipment Co. v. Moody*, 88 Ill.App.3d 187, 43 Ill.Dec. 438, 410 N.E.2d 438 (1st Dist.1980) (service upon "secretary on duty" is sufficient).

## C. Venue

 Despite the presence of personal jurisdiction and proper service of process, this case must be transferred to a more convenient forum. Hamilton's cross-claims against SMC concern two transactions: (i) SMC's efforts to collect on the Paribas "guarantee," and (ii) Hamilton's bid on the SMC contract. The former took place in Bahrain and Saudi Arabia, while the latter involved negotiations in Wisconsin and overseas. With the disposition of the interpleader action, there is no connection between this forum and either of these transactions, save the presence of SMC representatives in Chicago in early 1983. The vast majority of evidence in this case would come from persons and documents located outside of this district.

The cases cited by Hamilton are not to the contrary. For example, in both *Hyatt Int'l Corp., supra*, and *Pioneer Properties, Inc. v. Martin*, 557 F.Supp. 1354 (D.Kan.1983), the plaintiffs were residents of the forum state. This dispute, between a Wisconsin plaintiff and a Saudi defendant, would more conveniently be brought in either Wisconsin, where the plaintiff resides or Saudi Arabia. Nonetheless, it would not be proper or appropriate to dismiss the claims and require suit to be initiated in Saudi Arabia. *See Dalla v. Atlas Maritime Co.*, 562 F.Supp. 752, 757–58 (C.D.Cal.1983); *Pioneer Properties*, 557 F.Supp. at 1361–62. *See also* 1 Fed.Proc., L.Ed. §§ 1:749 and 1:750. Therefore, despite the presumption accorded to plaintiff's choice of forum, Hamilton's cross-

---

**8.** The subsequent contracts between SMC and two other Illinois corporations are not relevant to this action, since the Illinois long-arm statute looks only to the transactions from which the litigation arises. Neither do these contracts, standing alone with the transaction here at issue, bring SMC under the jurisdiction of Illinois courts as one "doing business" within the state. Hamilton has failed to establish the systematic pattern of activity within the state necessary for a finding of jurisdiction over SMC as one "doing business" in Illinois. *See Cook Assoc. Inc. v.*

*Lexington United Corp.*, 87 Ill.2d 190, 57 Ill.Dec. 730, 735–36, 429 N.E.2d 847, 852–53 (1981).

**9.** Whether the exercise of personal jurisdiction is proper has become a two-step inquiry since *Cook Assoc., supra*. The second and broader inquiry, whether the exercise of personal jurisdiction comports with the requirements of due process, was resolved in favor of the exercise of jurisdiction by the Seventh Circuit in *Wisconsin Electrical Mfg. Co., supra*, on facts very similar to those presented here.

claims against SMC must be transferred to the United States District for the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1404(a).

IT IS THEREFORE ORDERED that

(1) The Court finds and concludes that ANB properly refused to honor Paribas' demands for payment under the ANB letter of credit issued August 11, 1982, Number 202326. Accordingly, summary judgment is granted in favor of Hamilton Industries International, Inc. and against Paribas on the interpleader complaint and in favor of Hamilton Industries International, Inc. on Hamilton Industries International, Inc.'s cross-claim against Paribas.

(2) Count V of Hamilton Industries International Inc.'s cross-claim is dismissed, as judgment against Paribas on the interpleader compaint moots this complaint.

(3) The only matters remaining for determination are the cross-claims of Hamilton Industries International Inc. against Saudi Med Center, Ltd. These claims should be and are hereby transferred to the United States District Court for the Eastern District of Wisconsin.