JERRY SAMPSON, Adm'r of the Estate of Ray Sampson, Deceased, Plaintiff-Appellant, v. CAPE INDUSTRIES LIMITED *et al.*, Defendants (Zurich Insurance Company, Garnishee-Appellee).

Fourth District   No. 4—88—0658

Opinion filed June 28, 1989.

James Walker, Ltd., of Bloomington, for appellant.

William Robert Brandt, of Livingston, Barger, Brandt & Schroeder, of Bloomington, and Peter C. John and Matthew J. Gehringer, both of Phelan, Pope & John, Ltd., of Chicago, for appellee.

JUSTICE GREEN delivered the opinion of the court:

In the narrow context within which this appeal arises, the principal question for us to decide concerns the following set of facts. On May 14, 1984, a default judgment in the amount of $245,590.92 was entered in the circuit court of McLean County in favor of plaintiff Jerry Sampson, administrator of the estate of Ray Sampson, deceased, and against defendant Cape Industries Limited (Cape). The recovery was for the wrongful death of the deceased arising from his asbestosis. On March 22, 1984, plaintiff filed an affidavit for garnishment in that court seeking satisfaction of the judgment against garnishee, Zurich Insurance Company (Zurich). Plaintiff's claim was based upon the theory that Cape was insured under certain liability policies issued by Zurich to North American Asbestos Corporation (NAAC).

For the purposes of this appeal we must assume that two of those policies did provide such coverage. At the time of service of the garnishment summons, sufficient portions of the limits of those two policies were available for payment of claims, but thereafter Zurich exhausted the sums available under those policies by paying other claims. Then, on July 8, 1988, pursuant to Zurich's motion, the court

entered summary judgment for Zurich and against plaintiff in the garnishment proceeding.

Plaintiff has appealed, contending he had perfected a right prior to others, pending garnishment proceedings, to the sums available under the two policies because of the effect of service of the garnishment summons upon Zurich before those policy limits were exhausted. In issue is the operation of section 12—707(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 12—707(a)), which concerns the duties of a garnishee. It requires a garnishee, upon service of a garnishment summons, to hold subject to court order, "any non-exempt indebtedness or other non-exempt property" in the garnishee's control "belonging to the judgment debtor" or in which the latter *"has any interest"* all to the extent of the balance due on the judgment for which the garnishment is brought. It also provides that upon service of garnishment summons upon a garnishee, the balance due on the underlying judgments "becomes a lien on the indebtedness and other property held by the garnishee" and remains a lien *pendente lite.* (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 110, par. 12—707(a).) Plaintiff maintains that as a judgment creditor of Cape, an insured of the policies in issue, Cape had an "interest" in the proceeds available under the policy to which he established a temporary entitlement by service of the garnishment summons.

■ A summary judgment is properly granted only when the pleadings, depositions, affidavits, and other documents properly considered show, without existing questions of fact, that the requesting party is entitled to the judgment as a matter of law. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 489 N.E.2d 867.) The formation of the issues upon which summary judgment was granted here was somewhat uncertain. The record shows Zurich filed a motion for summary judgment on October 23, 1986, alleging plaintiff, for valid consideration, had entered into a covenant not to make claim against Zurich for any cause of action arising out of the injury to and death of plaintiff's decedent. On February 17, 1987, Zurich filed a motion for summary judgment based upon the theory that any coverage of Cape under the policy issued to NAAC had been voided by Cape's failure and refusal to cooperate with Zurich. Finally, on June 16, 1988, Zurich filed a document entitled "Memorandum in Support of Zurich Insurance Company's Motion for Summary Judgment." That pleading set forth that Zurich was not liable to plaintiff in garnishment, because Zurich had paid out sums equal to its policy limits on the policies in question to other persons making covered claims against other insureds.

The record makes reasonably clear that the request for the sum-

mary judgment was presented, argued, and decided upon the basis of the allegations in the memorandum and not upon the basis of the previous motions. That basis was that Zurich had effectively cut off any rights of plaintiff against the two policies by good-faith payments in amounts exhausting the policy limits to other persons making claims against entities insured under the policies. Thus, the question of whether Cape was an insured under the two policies was not an issue in the summary judgment proceedings. The court rejected plaintiff's theory that Zurich could not cut off rights he might have to the funds available. Zurich maintains this decision was correct, and that in any event, plaintiff was shown, as a matter of law, to be estopped to deny that the exhaustion of policy limits did not negate any liability it might otherwise have to plaintiff.

We agree with plaintiff that, assuming *arguendo* that Cape was an insured under the policies in question, the service of the garnishment summons on Cape gave plaintiff a prior right to the available policy proceeds subject to its ability to prove coverage under the policies. We also agree with plaintiff that Zurich did not conclusively show plaintiff was estopped to dispute Zurich's ability to cut off any rights of plaintiff by exhausting the policy limits. Accordingly, we reverse the summary judgment.

We consider first the question of whether, absent waiver or estoppel, Zurich could defeat any rights of plaintiff to garnish Zurich by exhausting its policy limits after it had been served with the garnishment summons. A provision in the two Zurich policies in issue stated Zurich "may make such *** settlement of any claim or suit as it deems expedient." Clearly, Zurich had the power to cut off subsequent garnishment claims by exhausting the policy limits before those claims were reduced to judgment against an insured and before a service of garnishment summons on it. (*Pekin Insurance Co. v. Home Insurance Co.* (1985), 134 Ill. App. 3d 31, 479 N.E.2d 1078; *State Farm Mutual Automobile Insurance Co. v. Murphy* (1976), 38 Ill. App. 3d 709, 348 N.E.2d 491; *Harmon v. State Farm Mutual Automobile Insurance Co.* (Fla. App. 1970), 232 So. 2d 206; see also *Zurich Insurance Co. v. Raymark Industries, Inc.* (1987), 118 Ill. 2d 23, 514 N.E.2d 150.) However, none of the foregoing cases involves the instant situation where the question was raised concerning the rights of a judgment creditor of an insured who had served this insurer with a garnishment summons prior to the insurer exhausting the policy limits.

The decision in *Zimek v. Illinois National Casualty Co.* (1939), 370 Ill. 572, 19 N.E.2d 620, sets forth that garnishment is a recog-

nized procedure whereby a judgment creditor who has obtained a judgment arising out of a covered occurrence may obtain satisfaction of the judgment by garnishing the judgment debtor's insurer. That decision also refutes any contention that uncertainty in regard to whether Cape qualifies as an insured here would make plaintiff's claim against Zurich too contingent to permit a garnishment suit or to create any priority of right to plaintiff pursuant to section 12—707(a) of the Code of Civil Procedure. According to the *Zimek* court, that type of contingency arises when policy coverage depends upon a condition to be performed or an event to occur in the future. *Zimek*, 370 Ill. at 576, 19 N.E.2d at 623.

The difficulty in determining whether plaintiff secured any prior right to policy proceeds by service of the garnishment summons upon Zurich centers upon the general principle recited by Zurich that a garnishor can obtain no greater right against a garnishee than the rights of the judgment debtor against the garnishee. (*Burkart v. Toraason* (1982), 107 Ill. App. 3d 92, 437 N.E.2d 388; *Marengo State Bank v. West* (1971), 132 Ill. App. 2d 106, 267 N.E.2d 527.) However, as we have indicated, no case has determined what rights such an insured, as Cape is taken to be, has against an insurer to prevent future exhaustion of policy limits when that insured already has a judgment against it.

■ Section 12—707(a) of the Code of Civil Procedure concerning the duties of a garnishee upon receiving summons speaks of the garnishee holding, subject to court order, "any non-exempt indebtedness or other non-exempt property" with the judgment upon which the garnishment is brought becoming "a lien on the indebtedness or other property held by the garnishee" *pendente lite.* (Ill. Rev. Stat. 1987, ch. 110, par. 12—707(a).) A debt owed by the garnishee to the judgment debtor is a subject for garnishment and an interest to which the lien created by service of a garnishment summons attaches. (*Pilafas v. Pilafas* (1963), 39 Ill. App. 2d 69, 188 N.E.2d 235.) Under the holding in *Zimek*, the garnishment claim of a judgment creditor against an insurer of a judgment debtor is a claim liquidated by the certainty of the amount of the judgment even though questions of policy coverage are in issue. The claim of the alleged insured would seem to have similar status.

■ An authority on insurance describes the operation of the service of a garnishment summons on an insurer in these words: "The writ of garnishment is not a physical attachment of property, but is a *notice to the garnishee to retain in his hands any indebtedness due to the principal defendant.*" (Emphasis added.) (22A J. Appleman, Insur-

ance Law and Practice §14562, at 461 (rev. ed. 1979).) Under *Zimek*, the liquidated judgment was "indebtedness due to the principal defendant," Cape, at the time the garnishment summons was issued under the stated facts upon which the court entered summary judgment. To permit the lien of section 12—707(a) to attach under the circumstances shown by the record would place a fair limitation upon the ability of an insurer to choose which claimants with which to make settlement. Zurich contends an insurer would be unduly hamstrung by having possible policy proceeds tied for the period of time to determine rights under a garnishment proceeding, but there is some desirability in permitting an early judgment creditor an opportunity to establish a right to those proceeds.

Zurich also purports to be concerned with being held to be in bad faith in not settling claims which could be settled if portions of policy limits are not tied up in garnishment proceedings. But undoubtedly, the lack of availability of funds within policy limits would be considered in judging the propriety of the conduct of the insurer.

■ The record shows plaintiff's attorney was also attorney for the parties who effected subsequent settlements with Zurich which exhausted the limits of the two policies. This relationship is at the heart of Zurich's assertion plaintiff is estopped to refute Zurich's contention that exhaustion of the policy limits released Zurich of any liability to plaintiff regardless of policy coverage or the effects of section 12—707(a) of the Code of Civil Procedure. Zurich points out plaintiff's attorney knew of the exhaustion of the policy limits and requested those settlements be made. Plaintiff is certainly charged with whatever notice his attorney had. However, Zurich petitioned the court to approve the settlements exhausting policy limits but the matter was never heard. In any event, as far as any duty was placed upon plaintiff to protect his rights, that duty was fulfilled by service of the garnishment summons. As Zurich has suggested, the most important element necessary to create an estoppel is conduct attributable to the party to be estopped which deceives the other party causing a detrimental reliance on the existence of the subject matter of the deceit. (*Northern Trust Co. v. Oxford Speaker Co.* (1982), 109 Ill. App. 3d 433, 440 N.E.2d 968.) Here, any deceit would have to have been with reference to whether plaintiff's attorney was acting on behalf of plaintiff when, in representation of others, he obtained the settlement which exhausted policy limits. Any responsibility of plaintiff's attorney to plaintiff is not before this court; however, we cannot find, as a matter of law, that plaintiff's attorney so deceived Zurich.

■ Another aspect of Zurich's claim of estoppel presents a some-

what more complicated situation. The record showed plaintiff, while represented by the same attorney, had joined in a written agreement with NAAC. At one point that document stated plaintiff "covenants not to execute on, or otherwise seek to collect any judgment or satisfaction from *** any obligation arising from the issuance of *** policies of insurance to NAAC by" Zurich. That agreement also recited plaintiff intends to continue seeking to pursue claims against others, including Cape. Plaintiff maintains the document is ambiguous. We need not decide that issue to conclude the document does not estop plaintiff from disputing that the exhaustion of the policy limits eliminated any liability of Zurich.

The agreement is one referred to in one of the earlier motions for summary judgment. This document, if properly supported, may well constitute an affirmative defense for Zurich as to the garnishment action. Neither the court record nor the Zurich brief indicates it is or has been considered in this way. Rather than presenting this evidence as a matter decisive in itself, it is presented merely to estop plaintiff from disputing a contention of Zurich's. Regardless of the interpretation given to the document, it does not create an estoppel.

For the reasons stated, we reverse the summary judgment appealed and remand the cause to the circuit court of McLean County with direction to proceed further.

Reversed and remanded.

McCULLOUGH, P.J., and LUND, J., concur.