**In re T & M ENTERPRISES, INC., Debtor.**

**Pamela S. Hollis, Trustee for the Estate of T & M Enterprises, Inc., Plaintiff,**

v.

**David P. Muller, Piotr L. Wisniewski and Muller Exterior, Inc., Defendants.**

**Bankruptcy No. 97 B 11823.
Adversary No. 00 A 00869.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Sept. 17, 2002.

---

Pamela Hollis, Hollis & Johnson, Chicago, IL, for Trustee/Plaintiff.

John E. Witanen, Park Ridge, IL, for Defendants.

Cristopher E. Lord, Chicago, IL, for Counter Plaintiff.

## MEMORANDUM OPINION

RONALD BARLIANT, Bankruptcy Judge.

The Trustee of the T & M Enterprises, Inc., bankruptcy estate moved for summary judgment on the cross claim asserted by Raymond and Lillian Perham, the sellers of T & M. The Trustee contends that she has rightfully retained as property of the bankruptcy estate $73,500 paid under an installment note made and delivered by the buyers of T & M, and that the sellers are barred by the doctrines of waiver, estoppel, and laches from attempting to recover those funds.

The buyers, David P. Muller and Piotr L. Wisniewski, also moved for summary judgment on the sellers' two count counterclaim. They join the Trustee's contention that the $73,500 collected by the Trustee is property of the bankruptcy estate. The buyers also contend that they are not liable to the sellers' for $8,478.32 in attorneys fees under an indemnification clause of the sales agreement. For the reasons set forth below, summary judgment is granted in favor of the Trustee and the buyers.

## FACTS

On November 26, 1996, Raymond and Lillian Perham ("sellers"), the principals of T & M Enterprises, Inc., entered into an agreement to sell T & M Enterprises to buyers David P. Muller and Piotr L. Wisniewski ("buyers"). The agreement was executed by the buyers, the Perhams, and T & M Enterprises. The agreed purchase price was $127,500. Of this amount, $40,000 was due at the closing and the remaining $87,500 was payable in monthly installments pursuant to an installment note. The note was executed between the buyers and the Perhams, and provided for monthly payments to begin on May 1, 1997. T & M Enterprises was not a party to the note.

On April 18, 1997, T & M Enterprises filed a voluntary bankruptcy petition, and Pamela S. Hollis was thereafter appointed as the Chapter 7 Trustee. The Debtor's bankruptcy petition lists the Sales Contract as an asset of the Debtor with a current market value of $19,762.41. Additionally, the Debtor's Statement of Financial Affairs lists "All assets sold to David Muller and Piotr Wisniewski on November 26, 1996 along with a covenant not to compete for $127,500" as a transfer within a year prior to the commencement of the bankruptcy case. It also states that Lillian Perham received $25,000 from the $40,000 down payment in November of 1996 as a "withdrawal from a partnership or distribution by a corporation."

The agreement states that the purchase price of $127,500 should be allocated to include good will, use of the business name, telephone number and inventory. Agreement at ¶ 4. The agreement also provides that the sellers should remain as consultants to T & M for three years and prohibits the sellers from competing with the buyers for ten years after the closing date. *Id.* at ¶¶ 5, 8.

The Debtor's assets were subject to substantial federal tax liens, and at the Debtor's § 341 meeting the Debtor's principal or the Debtor's counsel represented to the Trustee that the T & M bankruptcy was filed to stop collection actions by the IRS. Hollis Aff. at ¶ 6. The Trustee also in-

formed the Debtor's counsel that if the T & M bankruptcy was not dismissed, she would be required to collect the installment payments due from the sale of the Debtor's assets and maintain the bankruptcy as an open asset case. *Id.* at ¶ 7. In December 1997, the Bankruptcy Court authorized the Trustee to make an interim payment of $4,500 to the IRS pursuant to the Trustee's motion. *Id.* at ¶ 8.

The installment payments pursuant to the terms of the note and agreement became due only after the date that T & M filed for bankruptcy and the Trustee has collected the installment payments since June 1997 as property of the T & M bankruptcy estate. *Id.* at ¶ 9. The buyers, however, have refused to pay the $13,500 balance of the note on the ground that the sellers breached the sales agreement.

### PROCEDURAL HISTORY

The Trustee commenced this proceeding by filing a complaint against the buyers for the outstanding $13,500 balance due under the installment note. The buyers answered the complaint by admitting the payments were due the estate, but alleging that they have no obligation to pay because the Debtor materially breached the sales agreement. The buyers then filed a counterclaim against the Debtor and the sellers (Perhams) seeking damages for breach of contract.

The Trustee then answered the buyers' counterclaim stating that the Trustee had insufficient information about the breach of contract claims and asserted as affirmative defenses that (1) the estate has no liability to the buyers and (2) the buyers' failure to take any action against the Perhams to enforce their personal responsibilities operated as a waiver. Therefore, the buyers are barred by the doctrines of estoppel and laches to seek damages from the Trustee and the bankruptcy estate.

The buyers denied these affirmative defenses.

The sellers then filed two pleadings. One contains the sellers' answer and affirmative defenses to the buyers' counterclaim, and the sellers' counterclaim against the buyers. In their answer, the Perhams admitted that they received $40,000 at closing; however, they have not received any payments thereafter. The sellers also deny that they breached the sales agreement with the buyers. Furthermore, the sellers assert affirmative defenses based on the doctrines of estoppel, waiver, and laches, and that the buyers have failed to pay the Perhams according to the terms of the agreement. The counterclaim alleges that (1) the sellers are *personally* entitled to the $87,500 plus interest from the buyers due under the installment note; and (2) the sellers are entitled to recover $8,478.32 plus interest for attorneys' fees relating to a transaction known as the DeBruyn project that the sellers were required to pay pursuant to a retainer agreement entered into among T & M, the buyers, and the lawyers.

The second pleading filed by the sellers is a cross-claim against the Trustee alleging that the Trustee is wrongfully holding $73,500 in payments made by the buyers to the Trustee pursuant to the installment note. The sellers request that the $73,500 plus interest be turned over to them. The Trustee denied that she was wrongfully holding the property of the sellers. The Trustee also asserted affirmative defenses stating that the bankruptcy schedules list the sales agreement as property of the estate, and that the Perhams are now barred by the doctrines of laches and estoppel from claiming that the proceeds from the sale belong to them individually. Furthermore, the Perhams' failure to abide by the terms of the agreement was a breach of contract and a waiver or release

of their rights, if any, under the agreement.

The Trustee has now moved for summary judgment against the sellers requesting that the Court find that the money collected by the Trustee pursuant to the installment note is property of the T & M bankruptcy estate. The buyers joined in the Trustee's motion for summary judgment against the sellers in their response to the Trustee's motion for summary judgment. The buyers also moved for summary judgment against the sellers' counterclaim claiming that the money collected by the Trustee pursuant to the installment note is property of the estate. They also contend that only the Perhams benefitted from the legal fees that were paid to the attorneys retained by the buyers, and therefore the buyers are not obligated to reimburse the sellers for $8,478.32 in legal fees. The Perhams failed to file a timely response, and their motion to reset the briefing schedule was denied. This opinion addresses both the Trustee's and the buyers' motions for summary judgment.

## DISCUSSION

### Standard for Summary Judgment

Under Federal Rule of Civil Procedure 56(c), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056, summary judgment may be granted if the pleadings, depositions, answers to interrogatories, admissions and any affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The standards applied by this Court are set out in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *In re Walker*, 232 B.R. 725, 729–30 (Bankr.N.D.Ill.1999) and

*In re Fultz*, 232 B.R. 709, 717–18 (Bankr. N.D.Ill.1999).

### $73,500 Paid to the Trustee by the Buyers

The Perhams asserted a cross claim against the Trustee requesting that the Trustee turn over the $73,500 that was collected under the installment note and a counterclaim seeking $87,500 from the buyers pursuant to the note. Both the Trustee and the buyers moved for summary judgment requesting that the Trustee be allowed to retain the $73,500 as property of the estate. The buyers also moved for summary judgment against the Perhams' counterclaim, joining in the Trustee's motion for summary judgment that the money paid to and being held by the Trustee is property of the estate. Based on the doctrines of waiver, estoppel and laches, summary judgment is granted both in favor of the Trustee and the buyers.

### 1. Waiver

 The Perhams' failure to assert a claim, prior to this proceeding, to the money that they now allege is due them operates as a waiver. Waiver is the "intentional relinquishment or abandonment of a known right." *Sethness–Greenleaf, Inc. v. Green River Corp.*, 65 F.3d 64, 67 (7th Cir.1995). "[A] waiver of contractual rights can be implied as well as express-implied from words or actions inconsistent with the assertion of those rights." *Cole Taylor Bank v. Truck Ins. Exch.*, 51 F.3d 736, 739 (7th Cir.1995). The Perhams were aware that the Trustee had been collecting the installment payments pursuant to the note since the payments became due in May of 1997, and they never asserted a claim to that money until they filed their counterclaim and cross claim in this proceeding in March 2001. Furthermore, at the § 341 meeting in 1997, the Trustee

informed the Perhams and their counsel that if the T & M bankruptcy was not dismissed that, in her capacity as bankruptcy trustee, she would be required to collect the installment payments. Hollis Aff. at ¶ 7. Thus, the Perhams *knew* in 1997 that if the bankruptcy case continued that the Trustee would collect the installment payments. The Perhams' knowledge that the Trustee was collecting the payments and their failure to initiate any legal action against the Trustee for almost four years is inconsistent with their current claim and therefore operates as a waiver of their right to the payments.

Moreover, the Debtor's Statement of Financial Affairs, signed by Lillian, states that the Debtor transferred all of its assets to David Muller and Piotr Wisniewski on November 26, 1996 along with a covenant not to compete for $127,500. Additionally, in the section entitled "Withdrawals from a Partnership or Distributions by a Corporation" the schedule states that Lillian Perham received $25,000 from the down payment paid by the buyers for the assets of the company and the covenant not to compete. The agreement states that $40,000 was to be paid at the closing, $25,000 of which was paid by the Debtor to Lillian Perham as disclosed on the statement. The Perhams never asserted any claim for the remaining $15,000. Lillian's current claim is inconsistent with the Debtor's Statement of Financial Affairs that she signed. For that additional reason, the Court finds that she waived the claim she is now asserting.

**2. Estoppel**

■■■ In addition, the doctrine of estoppel precludes the Perhams from claiming entitlement to the funds both against the Trustee and the buyers. "A false representation that reasonably induces detrimental reliance is a classic basis for estop-

pel." *DeVito v. Chi. Park Dist.,* 270 F.3d 532, 535 (7th Cir.2001). "When a person apparently adopts a position which reasonably misleads someone into detrimental reliance, that person can be estopped from avoiding that position, regardless of the intent of his actions, if to hold otherwise would have an unjust effect." *LaSalle National Bank v. General Mills Restaurant Group, Inc.,* 854 F.2d 1050, 1053 (7th Cir. 1988) (quoting *Northern Trust Co. v. Oxford Speaker Co.,* 109 Ill.App.3d 433, 439, 65 Ill.Dec. 113, 440 N.E.2d 968).

■■■ The bankruptcy petition disclosed that Lillian Perham received $25,000 of the $40,000 paid at the closing, and that the Debtor sold its assets for $127,500. There is no indication that the $25,000 was insufficient consideration for the covenant not to compete that was also part of the deal. So far as could be gleaned from the schedules, while Ms. Perham may have been entitled to $25,000 for the covenant not to compete, the remainder of the sale proceeds belonged to the estate. Relying on this information, the Trustee informed the Debtor's principals and their counsel that she was required, in her capacity as bankruptcy trustee, to collect the installment payments. Hollis Aff. at ¶ 7. Thus, the Trustee relied on Ms. Perham's signature indicating that the payments due under the note belonged to the estate. The Trustee's reliance has caused her to incur costs including the employment of professionals and the filing of an adversary proceeding against the buyers to recover the outstanding balance due under the note. Therefore, the Perhams are now estopped from asserting a contrary position to the one asserted on the petition and relied upon by the Trustee to her detriment, and they are not entitled to recover the payments being held by the Trustee.

Similarly, the Perhams are estopped from asserting a claim against the buyers for the payments due under the note. The

buyers have made all monthly installment payments (except the remaining $13,500 which is in dispute), in good faith, to the Trustee in fulfillment of their obligation under the note. The buyers relied on the Perhams signing of the bankruptcy petition and the Trustee's representation that she would collect the payments due under the note. It would be inequitable to require the buyers to pay any additional money to the Perhams when the buyers have already made the payments to the Trustee. The Perhams are therefore estopped from recovering any money from the buyers.

### 3. Laches

▉ The equitable doctrine of laches also bars the Perhams' claim. Because the Perhams's cross claim is an equitable action, seeking the Trustee to turnover specific funds, it is appropriate to apply the equitable doctrine of laches. Moreover, a recent Seventh Circuit opinion stated that laches may be used as a defense "regardless of whether the suit is at law or in equity, because, as with many equitable defenses, the defense of laches is equally available in suits at law." *Teamsters and Employers Welfare Trust of Ill. v. Gorman Brothers Ready Mix*, 283 F.3d 877, 881 (7th Cir.2002)(citing *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 822 (7th Cir. 1999)). Thus, laches may even be appropriate to apply to the Perhams suit at law against the buyers.

One Federal District Court explained the doctrine of laches as follows:

According to BLACK'S LAW DICTIONARY (5th Ed.), the "doctrine of laches is based upon the maxim that equity aids the vigilant and not those who slumber on their rights." The doctrine of laches is designed to promote diligence and prevent enforcement of a stale claim. Dismissal of a claim on the grounds of laches requires that there be (1) unreasonable and unexcused delay in bringing the claim, and (2) material prejudice to the defendant as a result of the delay. To establish a laches defense, both of the above prongs must be met. Only then can the Court weigh the delay and prejudice to determine whether justice requires that the claim be barred. When applying the doctrine of laches to bar a claim, the period of delay is measured from when the claimant had actual notice of the claim, or, would have reasonably been expected to inquire about the subject matter.

*Vance v. U.S.*, 965 F.Supp. 944, 946–47 (E.D.Mich.1997) (internal quotation marks and citations omitted). *See also, Hot Wax, Inc.*, 191 F.3d at 820 (stating the requirements for laches are (1) unreasonable lack of diligence and (2) prejudice arising therefrom).

In this case, both requirements necessary to invoke the doctrine of laches have been satisfied. First, the Perhams were informed at the § 341 meeting in 1997 that the Trustee was going to collect the installment payments. Yet, for almost four years, the Perhams never even attempted to recover the money from the Trustee until they were brought into this case. Knowing the Trustee was collecting the payments for four years and failing to take any legal action at all to attempt to recover the funds, coupled with the Trustee's and buyers' reliance on the Perhams position, satisfy the first prong of the laches test as an unreasonable or unexcused delay.

Furthermore, if the Perhams were to prevail and recover the funds, the Trustee would be materially prejudiced by the Perhams' delayed claim. If this Court were to require the Trustee to turnover the funds to the Perhams, the Trustee would likely attempt to challenge the Perhams' entitlement to the funds as a fraudulent transfer prohibited by § 548 of the Bankruptcy Code. Section 548(a)(1) allows the Trustee "to avoid any transfer of an interest of the

debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition." Since the sale took place within one year prior to the filing of the petition, the Trustee could have pursued a fraudulent transfer claim under § 548.

The petition states that Ms. Perham already received $25,000 of the $40,000 paid at closing, and now the Perhams are trying to recover the remainder of the $127,500 purchase price. But if the Debtor sold "all of its assets" for $127,500 and the Perhams are entitled to collect all of the proceeds from the sale, then the Trustee could claim that the Debtor gave up all of its assets and did not receive equivalent value for those assets. At best, the Debtor would have received $15,000 (the remainder of the $40,000 which was paid at the closing and not distributed to Ms. Perham) for all of its assets, while the balance of the purchase price would be paid to the Perhams. Therefore, the Trustee would have a claim under § 548(a)(1)(B)(i) that by transferring all of its assets to the buyers, the Debtor "received less than a reasonably equivalent value in exchange for such a transfer."

However, § 546(a)(1)(A) of the Bankruptcy Code requires the Trustee to assert a fraudulent transfer claim under § 548 within two years after the order for relief. Since the Perhams waited almost four years after the note payments became due to attempt to recover those payments from the Trustee, § 546 now prevents the Trustee from challenging the Perhams' entitlement to the funds under § 548. If this Court were to require the Trustee to turnover the note payments to the Perhams, the Trustee would be required to raise equitable tolling to justify the two-year deadline set forth in § 546. Equitable tolling "permits a plaintiff to sue after the statute of limitations has expired if through no fault or lack of diligence on his part he was unable to sue before, even though the defendant took no active steps to prevent him from suing." *Singletary v. Continental Ill. Nat'l Bank & Trust Co.*, 9 F.3d 1236, 1241 (7th Cir.1993). Requiring the Trustee to raise and prove equitable tolling would materially prejudice the Trustee when the problem only arose due to the Perhams' failure to even attempt to recover the funds in a timely manner.

Similarly, the buyers may also rely on the doctrine of laches as a defense against the Perhams. As explained above, the doctrine may be applied in suits at law. *Gorman Brothers*, 283 F.3d at 880. Furthermore, "if a plaintiff does something that reasonably induces the defendant to believe he won't be sued and the defendant's ability to defend himself against the plaintiff's suit is impaired as a result, the plaintiff can be barred by the defense of laches from suing." *Gorman Brothers*, 283 F.3d at 882. "Laches is thus a form of equitable estoppel rather than a thing apart." *Id.* The buyers made the payments to the Trustee, in good faith, but under the Perhams present theory, the buyers cannot asset those payments as a defense.

Therefore, because no issues of material fact are in genuine dispute, the Trustee's motion for summary judgment is granted based on the doctrines of waiver, estoppel, and laches. Similarly, the buyers' motion for summary judgment on this issue is granted for the same reasons. Thus, the funds collected and retained by the Trustee are property of the estate, and neither the buyers nor the Trustee are obligated to make any payments to the Perhams.

**$8,478.32 of Legal Fees Arising from the DeBruyn Project**

Count II of the Perhams' counterclaim against the buyers seeks reimbursement for $8,478.32 in legal fees, related to the DeBruyn Project, paid by the Perhams

to the law firm of Fuchs & Roselli, Ltd. The Perhams claim that an indemnification clause in the agreement and a retainer agreement between T & M and Fuchs & Roselli obligate the buyers to pay the fees. The buyers moved for summary judgment against the Perhams because the Perhams were the only beneficiaries of the legal services performed by Fuchs & Roselli. The buyers were not even parties to the suit, and Fuchs & Roselli never even attempted to seek payment from the buyers in relation to the DeBruyn Project. Muller Aff. at ¶ 8.

The Perhams claim against the buyers for $8,478.32 for reimbursement of attorneys' fees is not subject to the indemnification clause of the agreement. Paragraph 19(a) of the agreement states that the buyers indemnify the sellers for "[a]ny and all damages, losses, claims, or expenses asserted by any party, creditor, or governmental authority for anything done, omitted to be done ·or *arising out of the conduct by the buyer*, after the date of closing." (emphasis added). Mr. Perham asked Mr. Muller only for permission to use the T & M Enterprises, Inc., name to assist him in obtaining the bid for the Debruyn project which led to the law suit and subsequent payment of attorneys fees at issue. Muller Aff. at ¶ 3. Although Mr. Perham agreed to pay $30,000 to Mr. Muller as a royalty fee for the use of the T & M name, Muller Aff. at ¶ 4, neither the buyers nor their business, Muller Exteriors/T & M Enterprises, Inc. ever performed any work on the DeBruyn project or received any payments or income relative to the project. *Id.* at ¶ 6. The Perhams' claim has nothing to do with "conduct by the buyer" and is therefore not covered by the indemnification clause of the agreement. Therefore, because there is no dispute as to any material facts, summary judgment is granted in favor of the buyers on the sellers' claim for reimbursement.

## CONCLUSION

Based on the doctrines of waiver, estoppel and laches, the Trustee's motion for summary judgment, joined by the buyers' motion for summary judgment, is granted. Thus, the Trustee may retain the proceeds she has collected pursuant to the installment note as property of the T & M Enterprises, Inc. bankruptcy estate, and the buyers have no obligation make any payments to the Perhams. Furthermore, the buyers' motion for summary judgment on the indemnification claim is granted. Therefore, the buyers are not responsible to pay $8,478.32 arising from the DeBruyn project because the law suit did not arise from conduct of the buyers.

The Trustee will submit a form of order in accordance with this opinion within 7 days.